Argued and submitted May 30, 1990, reversed December 12, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# LADEL STONE,
*Appellant.*

## (C88-07-34604; CA A60118)

802 P2d 668

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

JOSEPH, C. J.

### JOSEPH, C. J.

Defendant appeals his conviction for unauthorized use of a vehicle. ORS 164.135. He argues that the trial court erred in admitting evidence of purportedly gang-related group behavior and his possession of shotguns and shotgun shells. He also argues that there was insufficient evidence to find him guilty beyond a reasonable doubt. We reverse.

The evidence at trial was largely undisputed. On June 21, 1988, a Toyota station wagon was stolen from a residence in northeast Portland. A neighbor saw two white men drive up to the car. One of the men got into it and drove it away. The title to the car was in the glove compartment when it was stolen.

On July 4, 1988, at approximately 2:30 a.m., Police Officers Anderson, McLoughlin and Justus were in the Fred Meyer, Inc., parking lot at N.E. Killingsworth and Union, a high-crime area in Portland. The Bloods gang occupies several houses in the vicinity, from which members sell drugs. The Crips, a rival gang, and the Bloods engage competitively, and there is serious animosity between them.

The three officers, sitting in two cars, noticed a Toyota station wagon being driven slowly with its lights off. The car stopped at an intersection. The officers saw a passenger get out, look in their direction and then return to the car, which then proceeded slowly onto Killingsworth, still with its lights off. The officers followed the car. After several blocks, its lights went on; the car eventually pulled into a driveway. The officers then turned on their cars' overhead lights and approached the Toyota.

There were four people in it. Anderson asked defendant, the driver, for his driver's license and vehicle registration. Defendant produced a license and a title and said that he did not have a registration. The officers ran a check on the vehicle and discovered that it had been stolen. The officers returned to the car and performed a "felony stop," a police term that means that each person in the vehicle was removed from it at gun point, handcuffed, searched and placed in a police car. One of the occupants, not defendant, was dressed in a blue cap and a blue bandanna, and his mannerisms suggested to Anderson that he was a Crips gang member. Twelve

shotgun shells were found in the pockets of the other occupants, not defendant. The police found two loaded shotguns, with sawed-off barrels, on the car's floor, halfway under a seat. Defendant told Anderson that he had purchased one of the guns shortly before being stopped and the other several days earlier at a convenience store. He also told Anderson that he had purchased the car ten days earlier for $320 from a person named Andrew at N.E. 19th and Wygant in Portland. Another occupant also said that defendant had purchased the car from Andrew.

Defendant was prosecuted for unauthorized use of a vehicle.[1] The state, having stipulated that he did not steal the car, had to prove that defendant knew or should have known that the car was stolen. Anderson testified about what happened on the morning when defendant was arrested, that the two shotguns were found in the car and that the other occupants had shotgun shells in their possession. He also testified[2] about gang-related behavior in general, that Crips gang members usually wear blue and that drive-by shootings are typically conducted from stolen or borrowed vehicles that are not traceable. He also gave testimony as to the types of guns used in drive-by shootings, one being a shotgun with a sawed-off barrel.

Defendant's grandmother testified that she often held money entrusted to her by her grandchildren. She said that some time that summer defendant had asked for and received $400 from her to buy a car. Defendant's brother testified that he was present when defendant asked for the money and that, on that day, defendant, defendant's uncle and a third man came to the grandmother's house. The Toyota was then parked outside. When the police seized the car, it had a new battery and battery cables. It had the correct license plates;

---

[1] Numerous other, more serious charges were dismissed before trial.

[2] The state never tried to qualify Anderson as an expert. It asked a series of questions about gang-related activities and about his experience with gangs. He was permitted to answer most of the questions over defendant's specific and continuing objections. The rulings on the objections are not made assignments of error, except in one instance. Anderson testified that another officer was the source of much of his "expertise." (Anderson had never investigated a drive-by shooting, for example.) Defendant's objection that Anderson ought not to be allowed to testify, because the other officer was the more qualified, was overruled. We need not decide the assignment of error that is based on that ruling.

there was no evidence of an attempt to obscure the plates on the night of the alleged unauthorized use and no evidence of an attempt to paint or otherwise disguise the car.

Defendant assigns as error the trial court's denial of his motion *in limine* to exclude testimony about gang activity, drive-by shootings, gang members' dress and behavior and the guns and shells found in the car. The trial court admitted the evidence as relevant to and probative of defendant's knowledge that the car was stolen.[3]

The state offered this rationale for admitting the evidence:

"We'd be asking the Court to consider the — ask the jury to consider the sum total of facts to infer that the time that it was being operated by Mr. Stone, the car was being used for an unlawful purpose: that it was being used — that it was going to be used as a vehicle in a drive-by shooting. And then ask the jury to take the next step, which would be that if that's what Mr. Stone was doing with the car, it is likely — maybe they'd be satisfied beyond a reasonable doubt that, taken together with other evidence, that he knew that the vehicle was stolen."

Defendant argues that there is no logical connection between activities of gangs in general and drive-by shootings and *his* knowledge that the car that he had paid money for was stolen. He also argues that the purported effect of the evidence is premised solely on the witness's own statements of what it proves and is so speculative that it is irrelevant as a matter of law to the charge against him, given that little or none of the activity talked about by the witness was shown to have been done by defendant. Even if the evidence is held to be relevant, he asserts, its probative value was exceeded by its unfairly prejudicial nature, OEC 403, given the current attention paid to gang crime in Portland.

The state argues that the evidence was relevant as circumstantial evidence of his knowledge that the car was

---

[3] The state did not tell the jury that defendant possessed the guns illegally, which would have made the evidence "other crimes" evidence. Additionally, the record is unclear whether defendant actually possessed shotgun shells; however, given the manner in which the evidence was presented, the jury would very likely have attributed possession to defendant.

stolen.[4] It contends that an actor's knowledge, like an actor's intent, is often only provable by the acts themselves and the circumstances under which the acts take place. Moreover, the state claims that defendant was not prejudiced by the evidence, because no evidence of completed crimes was introduced, the jury was not told that defendant possessed the shotguns illegally or that defendant or anyone else in the car had used a weapon that night. It asserts that the evidence could not have had an inflammatory effect, because the jury was carefully told that the evidence went only to defendant's knowledge.

OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

That is, evidence must tend to prove or disprove one or more issues in the case. *State v. Manrique,* 271 Or 201, 205, 531 P2d 239 (1975). The proper question in determining logical relevance has been stated: "Does the item of evidence even slightly increase or decrease the probability of the existence of any material fact in issue?" *State v. Gailey,* 301 Or 563, 567, 725 P2d 328 (1986).

We conclude that the gang-related evidence was irrelevant to prove that defendant knew that the car was stolen. Under the state's rationale, the testimony was meant to prove that defendant was a gang member or associate and was in the process of committing a drive-by shooting. Only if the evidence could prove those threshold facts, could the jury be allowed to infer that defendant knew that the car was stolen. The state wanted the jury to find that defendant was a bad person about to participate in doing a bad thing that, in other instances and at other times and with other people, had involved stolen cars and that, therefore, defendant knew or ought to have known that the car that he was driving was

---

[4] The state argues that defendant has conceded that the evidence is relevant, because he says very little in his brief as to why it is irrelevant and speaks mostly to why it was too prejudicial to admit. We do not agree. At trial, defendant argued strenuously that the evidence was irrelevant, and he quotes most of those arguments in his brief.

stolen. Defendant was not on trial for committing or attempting to commit a drive-by shooting or for gang activities of any sort. Evidence is relevant if it reasonably and fairly relates to a fact or issue about the charged crime. When a jury has first to decide that a defendant is guilty of another crime, or had intended to commit another crime, in order to connect the evidence logically to the issue to be proved under the crime charged, that evidence, as a matter of common sense and as a matter of law, is irrelevant.

■ Without the inadmissible gang-related testimony, defendant's possession of the guns is irrelevant to his knowledge of whether the car had been stolen. Possession of guns alone does not increase the probability that defendant knew that the car had been stolen, but would only prove that defendant is a bad person, which is not in issue at all. *See State v. Gailey, supra; State v. Reingold,* 49 Or App 781, 784-85, 620 P2d 964 (1980), *rev den* 290 Or 727 (1981).

■ The trial court erred in admitting the evidence and the error was prejudicial, requiring reversal of the judgment of conviction. Without the inadmissible evidence, even after resolving any conflicting evidence in favor of the state, there was not sufficient evidence from which a reasonable jury could find defendant guilty beyond a reasonable doubt.

Reversed.