Argued and submitted May 29, affirmed December 9, 1992, reconsideration denied
January 27, petition for review allowed February 23, 1993 (315 Or 442)

## STATE OF OREGON,
*Respondent,*

*v.*

## TODD LEE HAMPTON,
*Appellant.*

(C91-01-30249; CA A69310)

843 P2d 483

Sally L. Avera, Public Defender, Salem, argued the cause and filed the brief for appellant.

Harrison Latto, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor

General, and Diane S. Lefkow, Assistant Attorney General, Salem.

Before Joseph, Chief Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

Joseph, C. J., dissenting.

## ROSSMAN, J.

Defendant appeals his conviction for assault in the second degree, ORS 163.175, for hitting a police officer in the head with a beer bottle. He assigns error to the trial court's admission of evidence that he was on parole or probation when he committed the act and to the denial of his motion for a mistrial. We affirm.

On January 20, 1991, at approximately 10 p.m., Deputy Sheriff Reese was on routine patrol when a car pulled alongside him, but slowed suddenly, as if the driver were trying to avoid being noticed. He decided to follow it. He thought three or four people were in the car. He temporarily lost sight of it but soon found it parked in the driveway at Freauf's house. He determined that it had been reported stolen and called for cover. Deputies Gustafson and Harper responded. All of the officers were in uniform.

Reese and Gustafson went to the house and knocked on the front door. Freauf consented to the officers' searching the house. After looking through the ground floor of the house, they saw a stairway leading to the basement. A single light was on at the top of the stairs. They went down into the dimly lit half-basement and found Freauf's son, Dement, standing in front of a fireplace and fumbling with something on the mantle. They announced that they were sheriff's deputies and told Dement to raise his hands. He hesitated but complied after the officers drew their guns. On the mantle they found various drug paraphernalia and a plastic bag that contained some drug residue. They arrested Dement for possession of a controlled substance and took him outside.

A few minutes later, Dement's father told them that another person was still in the basement. Reese and Gustafson went down again and found defendant crouched behind a chair. The officers testified that they thought that they had identified themselves to him, but were not certain. Defendant fought back when Reese tried to handcuff him, and he scrambled to the stairs with Reese hanging on. Gustafson was a few steps behind as they went upstairs and onto the back porch. Reese and defendant were still struggling when they reached the top. Gustafson testified that he

saw defendant grab a bottle that had been "sitting on a kind of a ledge there."

> "I saw his hand come down and grab the bottle and I yelled at [Reese] that, you know, hey, he's got a bottle. I then heard the bottle — a crashing noise, I heard the bottle break."

He did not actually see defendant strike Reese, because Reese's body was blocking the view. He did see broken glass fall to the floor at the top of the stairs.

Reese testified that he and defendant wrestled as they went up the stairs and then

> "stumble[d] out the screen door and there were a bunch of bottles there, and I remember some of them getting knocked over, [I was] kind of hunched over, almost like a head-lock type of situation, both of us were hanging on to him. * * * There were a couple of steps off the porch on to the dirt there, and I could see [defendant] reach down and pick up a bottle, and the next thing I knew he hit me with the bottle."

Reese conceded that he did not actually see defendant hit him, because he was facing the ground, and he said that he did not feel the blow itself, but felt the glass tumbling around his head.

Harper heard yelling and glass breaking and went to the back of the house. He arrived just as the three men were emerging from the porch. He saw defendant flailing his arms and saw the men fall from the porch and onto the hood of a car, but he did not see the incident with the bottle. He rushed to help subdue defendant, arrest him and place him in handcuffs. Reese said to Harper that defendant had hit him on the head; a knot on his forehead was beginning to discolor.

Defendant had complained about being injured, so, after the arrest, Harper took him to the hospital for a checkup. Harper testified that, as they were leaving the hospital,

> "[Defendant] told me, his exact words were, 'I can't believe those wienies, they are lucky I wasn't throwing blows.'
>
> "* * * * *
>
> "I told him, I said, 'What are you talking about? You hit one of them in the head with a beer bottle.' And then his reply was, 'Well, that was only after they pissed me off.' "

Before trial, the state sought a ruling on the admissibility of evidence that defendant was on parole and out of contact with his parole officer when the incident happened. It argued that the evidence would show that defendant had a motive to commit an assault. Defendant argued that the evidence was irrelevant and unfairly prejudicial. The court declined to rule until a witness was actually testifying but acknowledged defendant's continuing objection.

The state's case opened with testimony from a parole and probation office intake person, who testified that defendant had come in to make an appointment and that, after giving him an appointment slip, she asked if there was an outstanding warrant for his arrest. She said that defendant said no, and she asked him to stay until she "clarified it and resolved the matter." He then asked if he could go to the restroom. "I said sure but would he please come back, and that was the last we saw of him." She testified that she later confirmed that there was an outstanding warrant for his arrest.

Defendant's parole officer testified that she had never met defendant and that he did not keep his appointment with her and never submitted a monthly report form. She testified that, when a client fails to keep an appointment, she typically reports the violation to the releasing authority and an arrest warrant is issued.

Defendant moved for a mistrial during the first recess on the ground that the testimony of the parole and probation office employees was irrelevant, unfairly prejudicial and inadmissible evidence of prior bad acts. OEC 402; OEC 403; OEC 404(3).[1] Defendant concedes that the evidence might have been relevant if he had been charged with escape or resisting arrest, but not here, where he is charged with committing an assault. The state argues that

"[t]he reason the evidence would be relevant to prove defendant's motivation to commit those crimes is the same reason

---

[1] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

the evidence is relevant to prove his motivation to commit assault on Deputy Reese."

The indictment charged that defendant

"did unlawfully and knowingly cause physical injury to Multnomah County Sheriff's Office Deputy Michael Reese by means of a dangerous weapon, to wit: a bottle, by breaking it over his head."[2]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. The state argues that the evidence was relevant, because a rational juror could reasonably infer that "defendant sought to get away from the officer because he knew outstanding charges were pending against him and that his parole/probation status—*ergo* his freedom—was in jeopardy" and that that was his motive, the reason that he "vigorously fought to 'try to get away.' "

We agree that proof of a motive[3] would be relevant to prove that a defendant struck a blow, *see, e.g., State v. Rose*, 311 Or 274, 283, 810 P2d 839 (1991), particularly when the state has no direct evidence of the striking. A jury could reasonably infer that the degree of force that a defendant used was proportional to the degree of fear that he had of becoming subject to the victim's control. Therefore, that a defendant might have known that there was an outstanding warrant for his arrest would be relevant.

However, that determination does not end our inquiry. Even relevant evidence must be excluded if its prejudicial effect substantially outweighs its probative value. OEC 403.

---

[2] ORS 163.175(1)(b) provides that a person commits the crime of assault in the second degree if the person "[i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon." To prove the case, therefore, the state must show these elements: (1) that defendant struck the victim with the bottle; (2) that he did so knowing that the blow would cause physical injury; (3) that the bottle that he used was a dangerous weapon; and (4) that the blow caused an injury.

[3]

"Motive is but a cause or reason that moves the will and induces action * * *, an inducement which leads to or tempts the mind to commit an act * * *." *State v. Walker*, 244 Or 404, 411, 417 P2d 1004 (1966).

"In making this decision * * *, the judge should engage in four steps. First, the trial judge should assess the need for the * * * evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence." *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987).

The resolution of this issue requires the court to focus on the need for the evidence, its certainty, its strength, any inflammatory effect and the time needed to present the evidence. *See State v. Johns*, 301 Or 535, 725 P2d 312 (1986). Although defendant argues that the state did not need the evidence, he is wrong. He denied hitting the officer. The evidence was needed to explain why defendant would have, and in fact did, hit the officer in an attempt to flee custody.[4] *See State v. White*, 71 Or App 299, 303, 692 P2d 167 (1984), *rev den* 298 Or 705 (1985). Defendant does not challenge the certainty of the evidence. The evidence was strong: the fact that defendant left the parole and probation office without waiting for verification of the outstanding warrant and that he never contacted the office thereafter implies that he knew that the outstanding warrant was valid and that he did not want to be taken into custody. Obviously, the evidence was

---

[4] The state sought to prove that defendant might have known about the warrant by introducing foundation testimony that also disclosed that he was on parole or probation for a previous offense, that he had violated the terms of his parole or probation and that, as the parole officer indicated, there was probably an outstanding warrant for that violation as well. The state's need for that evidence must be evaluated in the light of its other evidence from which the jury could infer that defendant might have "vigorously fought to 'try to get away.' " The basement was small and dark, and he had been hiding while police arrested another person in the same room for possession of a controlled substance. The jury could infer that defendant might have feared that he, too, would be arrested for the same crime. It could also infer that he was aware of the stolen car parked in the driveway and feared that he would be arrested for that. When the police found him, there was a struggle and a lot of yelling. The jury could also infer that, while defendant was struggling to get away, he thought that he might also be wanted for arrest for something else. Those inferences are reasonable.

potentially inflammatory; generally, any evidence tending to establish a prosecution's case has that potential, at least from a defendant's point of view. However, in the exercise of its discretion, the trial court found under all the circumstances that its relevance outweighed any inflammatory effect. The evidence did not suggest that a person on parole or probation had a propensity to assault police officers. Moreover, defendant testified, and admitted, on direct examination that he had committed prior crimes. Finally, as the state points out, the time needed to present the evidence was not long, consuming only 13 pages of a transcript exceeding 400 pages.

We hold that the trial court, having determined that the evidence was logically relevant and was not outweighed by the danger of unfair prejudice, did not abuse its discretion in admitting it.

We hold that the trial court also did not err in denying the motion for mistrial.

Affirmed.

**JOSEPH, C. J.,** dissenting.

The first half of the majority's opinion is beautifully written, for the most part. It is a shame that the opinion is, entirely, wrong.

The majority apparently rejects the state's argument that the challenged evidence is relevant to prove defendant's motivation to commit an assault, although it does not expressly say so. Although knowing the "victim" to be a peace officer making an arrest is an element of resisting arrest, ORS 162.315, it is not relevant to a charge for assault. I agree with the majority on that, even though its note 4 tends to obscure what it does mean to say.

The majority's note 2 properly states the elements of assault in the second degree under ORS 163.175(1)(b). Unfortunately, the majority refuses to acknowledge that evidence that defendant was on parole or probation offers nothing by way of proof of any of those elements.

Evidence that defendant might have known that he was wanted on an arrest warrant requires a slightly more detailed analysis. A jury could make no reasonable inference

that a wanted person would be more (or less) likely to know that hitting someone with a beer bottle could cause physical injury. It could also make no reasonable inference that defendant's being wanted has any bearing on whether a beer bottle is a dangerous weapon or whether Reese suffered an injury. The only element to which the evidence could conceivably be relevant is whether defendant actually struck the blow.

The trial court reasoned:

> "And that he was avoiding—trying to avoid being taken into custody, at least one could infer that, that that was the reason he left [the parole and probation office]. I suppose one could draw that same inference regarding his conduct toward the officers on this occasion. If the evidence is that he had this information and the officers did not that would explain [his] reluctance to remain and talk to them."

By its very first witness, the state sought to prove that defendant might have known about the arrest warrant by introducing foundation testimony that also disclosed that he was on parole or probation[1] for a previous offense, that he had violated the terms of his parole or probation and that, as his parole officer indicated as a witness, there was probably an outstanding warrant for that violation as well. The state's need for that evidence must be evaluated in the light of its other evidence from which the jury could infer that defendant might have vigorously fought to try to get away.

The majority's note 4 recites a number of inferences that the jury might have drawn from the challenged evidence. However, evidence that defendant was on parole or probation, had left the parole and probation office without permission and had violated his parole or probation all invited the jury to conclude that he is a bad person, which is wholly irrelevant to the crime charged. *See, e.g., State v. Stone*, 104 Or App 534, 802 P2d 668 (1990). The evidence might also have led the jury to believe that it was deciding whether

---

[1] The trial judge explained that requiring the witnesses to speak of "parole and probation" rather than only of "parole" would mitigate any tendency the jury might have to infer that defendant's previous conviction was for a serious crime. I note that the court did not explain why it thought that the jury was that sophisticated in its understanding of the criminal justice system, but it would have made no difference to my view if the witnesses had used only the term "probation."

defendant had violated his parole.[2] I would conclude that the prejudicial effect of the evidence, taken as a whole, substantially outweighs its probative value and, therefore, that its admission was outside the trial court's range of discretion. OEC 402; OEC 403; OEC 404(3).

Of course, I would not reach defendant's other assignment of error.

---

[2] I also note that the first 2 witnesses that the jury heard testified only about the parole violation and said nothing at all about the assault.