Argued and submitted August 26, reversed and remanded for new trial
November 9, 1994

STATE OF OREGON,
*Respondent,*

*v.*

TERRY LEE MIDDLETON,
*Appellant.*

(92D-106815; CA A80140)

884 P2d 873

Alan H. Biedermann, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Coyreen R. Weidner, Certified Law Student.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant appeals his conviction for carrying a concealed weapon. ORS 166.240. We reverse.

In the afternoon of November 21, 1992, an officer stopped defendant for failing to stop at a stop sign. Defendant was driving a Cadillac that belonged to the parents of his girlfriend. Defendant and his male passenger got out of the car. The passenger immediately began walking away, and the officer did not try to stop him.

As defendant got out of the car, the officer saw him reach inside his jacket and pull out a brown object that he tossed onto the floorboard of the car. Defendant admitted that his driver's license was suspended. When the officer went around the car to the passenger's side to look for the car registration in the glove box, he saw the brown object lying on the floorboard of the car, between the pedals and the seat on the driver's side. The officer recognized the object as a sheath. His testimony was that, inside the sheath, he could see a black-handled metal object with a silver shaft, which he described as an ice pick that had been modified into a home-made knife or "fixed-blade weapon." It had been honed to a sharp point at the end. The shaft was made out of steel that was extremely hard, and the officer thought that it could have penetrated his bullet-resistant vest if someone stabbed him with it. The handle had been taped with black tape. Based on his training and experience, the officer described the object as a "very effective weapon." When the officer asked defendant about the object, defendant answered that it was a tool that he used in his work as a mason. In response to the officer's question, defendant explained that he had filed the tip to make it sharper for use in his work. When the officer asked defendant if he had any other weapons, defendant said no.

Defendant's girlfriend, Liedle, testified as a defense witness. Her testimony was that defendant worked in masonry and that he sometimes borrowed her father's tools. She identified the object as a Craftsman punch, a tool generally used for work on cars and machinery. The punch belonged to her father and was among his tools. The sheath did not go with the punch, but with a set of scissors, known as snips, which were used for wire cutting. She identified the

snips and stated that they had been in the car with the sheath, and that the snips might have fallen out of the sheath. Liedle had previously seen both the punch and sheath in the car and had personally placed the punch on the floorboard after she had retrieved it from the driveway. She testified that she and her father had previously filed the tip of the punch to a point so that it would make a smaller hole. She also testified that she was familiar with the jacket that defendant was wearing and that the sheath was too large to fit into any of the pockets. She had never seen him carry the Craftsman punch in his pocket and did not believe that it was a weapon, although she testified that she would not want to be "poked in the eye with it."

When the officer retrieved the sheath, he also retrieved a small black fanny pack that was lying on the floorboard on the passenger side of the car. The officer was concerned that the pack might contain a weapon. When he opened the pack, he found a four-inch folding knife, several syringes, some cotton and a discolored spoon. The officer did not seize those items, but returned them to defendant. Defendant was not charged with any offense arising from the contents of the pack.

Defendant assigns error to the trial court's denial of his motion in limine to exclude evidence that drug paraphernalia was found in the fanny pack and in denying his motion for a mistrial after the officer testified about that paraphernalia. The trial court admitted the evidence pursuant to OEC 404(3).[1] Before trial the court ruled that, if the defense contended that the object was not a weapon, the evidence "would suggest that the defendant may have needed a weapon to protect him from people he was associating with when engaged in illegal drug activities." At trial, the court stated that the evidence

> "rebuts [defendant's] claim that it's a tool. I've read a lot of search warrants, so I know that, based on what officers have

---

[1] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

been trained, people who engage in trafficking in drugs commonly carry weapons. I suspect the jury knows that * * * even without having the benefit of having read all those search warrants. And I think, to some extent, there's a common sense link to that. And so *although that testimony hasn't been given in this case,* I would still feel that that would be relevant to rebut the defendant's statements that he made to the officer that this was a tool rather than a weapon. * * *

"'* * * * *

"It goes to motive [under OEC 404(3)]. It goes to knowledge." (Emphasis supplied.)

The admissibility of evidence of other crimes or bad acts under OEC 404(3) is governed by a three-part test set out in *State v. Johnson,* 313 Or 189, 195, 832 P2d 443 (1992).[2] The first part of that test requires that the evidence must be independently relevant for a purpose other than showing criminal character. 313 Or at 195. Defendant argues that the evidence of the drug paraphernalia had no relevance for a noncharacter purpose, that it was only to show his bad character. He argues that there was no evidence that showed any "link" between the possession of the paraphernalia and carrying a concealed weapon.

In *State v. Stone,* 104 Or App 534, 802 P2d 668 (1990), the defendant was convicted for unauthorized use of a vehicle after he was stopped with passengers in the car, one of whom was dressed in a manner suggesting he was a member of the Crips gang. The defendant argued that the court erred in admitting testimony of an officer about gang-related group behavior in general, the type of clothing usually worn by Crips members and that drive-by shootings were typically conducted from stolen vehicles. The defendant argued that there was no logical connection between that evidence and his knowledge that the car was stolen.

---

[2] That test is:

"(1) The evidence must be independently relevant for a noncharacter purpose; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403." *State v. Johnson, supra,* 313 Or at 195. (Footnotes omitted.)

We agreed that the evidence was not relevant to prove the defendant's knowledge. We noted that the evidence was meant to prove that the defendant was a gang member and was in the process of committing a drive-by shooting: The state wanted the jury to find that the defendant was a bad person, about to participate in doing a bad thing, and that, therefore, the defendant knew he was driving a stolen car. *State v. Stone, supra*, 104 Or App at 539.

The situation here is analogous, except that there is no evidence linking the paraphernalia and the charged crime.[3] In *Stone*, there was at least testimony linking stolen cars to gang activity and drive-by shootings, even though we held that evidence about such activity in general was irrelevant to prove the defendant's knowledge. Here, there was not even general evidence that drug abusers or traffickers carry concealed weapons. We conclude that the evidence was offered here for the same purpose as the evidence in *Stone*: to prove that defendant is a bad person, that he was participating in the drug world and that, therefore, he was carrying a concealed weapon.

As we concluded in *State v. Stone, supra*, 104 Or App at 540:

> "Evidence is relevant if it reasonably and fairly relates to a fact or issue about the charged crime. When a jury has first to decide that a defendant is guilty of another crime, or had intended to commit another crime, in order to connect the evidence logically to the issue to be proved under the crime charged, that evidence, as a matter of common sense and as a matter of law, is irrelevant."

Here, the jury first would have to decide that defendant was guilty of a drug offense in order to connect the drug paraphernalia to the offense of carrying a concealed weapon. However, defendant was not on trial for trafficking in drugs or for any drug-related offense. The evidence was irrelevant, and the trial court erred in allowing it.

---

[3] The state contends that it was not necessary for there to be evidence showing a link and that the trial court correctly found an "implicit" link between drugs and weapons. The Supreme Court has held otherwise. In reviewing a trial court's determination of relevancy, the appellate court must "determine whether there is sufficient evidence in the record to support the trial judge's finding." *State v. Hampton*, 317 Or 251, 254, 855 P2d 621 (1993); *State v. Pinnell*, 311 Or 98, 806 P2d 110 (1991).

We cannot say that the error was harmless. Defendant's case was premised on his argument that the object was a tool, not a weapon. We cannot say that the testimony suggesting that defendant was involved in drug activity had little likelihood of affecting the jury's determination that the object was a weapon, as claimed by the state, instead of a tool as claimed by defendant.

Reversed and remanded for new trial.