Argued and submitted October 20, 1995, reversed and remanded in part with instructions; otherwise affirmed April 17, petition for review denied September 24, 1996 (324 Or 229)

DARREL S. WARREN,
*Appellant,*

*v.*

George BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

(CV 93-0289; CA A84209)

915 P2d 1016

Wayne Mackeson argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R.

Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Petitioner was convicted after a jury trial of manslaughter in the second degree, ORS 163.125, assault in the second degree, ORS 163.175, assault in the fourth degree, ORS 163.160, and felon in possession of a firearm, ORS 166.270. He then sought post-conviction relief, alleging inadequate assistance of counsel and challenging the lawfulness of his sentence. He now appeals the denial of relief. We affirm in part and reverse in part.

Petitioner's story of drugs, guns and family feuding unfolds in the waning hours of 1990. On December 31 of that year, petitioner, known as "Pappy" Warren, had gathered with various family members and friends at the Rainier Motor Inn in Rainier, Oregon, to celebrate the new year. The celebration, however, erupted into a series of violent clashes with the Neal brothers and ended in the fatal shooting of an innocent person asleep on petitioner's motel room floor.

At about 9:00 or 9:30 p.m. on December 31, Chris Neal went to petitioner's room with $100 to purchase cocaine. Petitioner refused to sell him drugs, and instead pointed a gun at him, took the $100 and claimed that one of the Neal brothers had "screwed him over" for some money. Chris Neal left. At about 11:00 p.m. that same night, Chris Neal's older brother Tim arrived at the motel and got into an argument about $400 he owed petitioner from a previous drug deal that "went bad." Petitioner pulled out a gun and struck Tim Neal in the head, cutting his ear. Tim Neal left, bent on revenge.

After unsuccessfully searching for a gun, Tim returned to the motel at about 2:30 or 3 a.m., armed with an axe handle. Accompanying him was his older brother Roy, who carried a baseball bat. The Neal brothers kicked in the door of petitioner's room and rushed inside. Chris Warren, petitioner's son, began struggling with Roy for control of the baseball bat. Petitioner dashed from the bathroom and struck Roy in the head with a pistol, causing the gun to discharge. The bullet struck Shaniko Dix, a friend of petitioner's son, who was asleep on the floor. Dix died from the gunshot wound.

A grand jury indicted petitioner for manslaughter in the second degree, ORS 163.125 (Count 1); assault in the second degree on Tim Neal, ORS 163.175 (Count 2); assault in the second degree on Roy Neal, ORS 163.175 (Count 3); and felon in possession of a firearm, ORS 166.270 (Count 4). Petitioner had been convicted of delivery of a controlled substance in 1980 and in 1981. His trial attorney did not move to sever the charges for trial. Tim and Roy Neal pled guilty to second degree burglary and testified for the state. The jury found petitioner guilty as charged on the manslaughter count, the felon in possession count, and the assault charge relating to Roy Neal (Count 3). On the attack on Tim Neal (Count 2), it found him guilty of the lesser-included offense of assault in the fourth degree. ORS 163.160. On direct appeal, we affirmed without opinion. 115 Or App 102, 835 P2d 964, *rev den* 314 Or 574 (1992).

■ Petitioner raised numerous grounds for post-conviction relief, alleging inadequate assistance of counsel, ORS 138.530(1)(a), and challenging the imposition of a "gun minimum" sentence, ORS 138.530(1)(c).[1] The post-conviction court denied relief, and petitioner raises the same grounds on appeal. On review of a denial of post-conviction relief, we are bound by the post-conviction court's findings, if supported by evidence in the record, but we examine anew its constitutional determinations. *Krummacher v. Gierloff*, 290 Or 867, 869, 627 P2d 458 (1981).

■■ To prove inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, petitioner

---

[1] ORS 138.530 provides, in part:

"(1) Post-conviction relief pursuant to ORS 138.510 to 138.680 shall be granted by the court when one or more of the following grounds is established by the petitioner:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.

"* * * * *

"(c) Sentence in excess of, or otherwise not in accordance with, the sentence authorized by law for the crime of which petitioner was convicted; or unconstitutionality of such sentence."

must show that "counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995); *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Prejudice occurs when counsel's deficient performance has "a tendency to affect the result of the prosecution" of petitioner's underlying criminal case. *Stevens*, 322 Or at 110; *Aikens v. Maass*, 122 Or App 321, 324, 858 P2d 148 (1993), *rev den* 318 Or 350 (1994).

■ To establish ineffective assistance of counsel under the Sixth Amendment to the United States Constitution, petitioner must prove that counsel's assistance was unreasonable and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chew v. State of Oregon*, 121 Or App 474, 477, 855 P2d 1120, *rev den* 318 Or 24 (1993), *quoting Strickland v. Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984). We first address petitioner's state constitutional claims. *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983).

■ Petitioner contends that his trial attorney's failure to move for severance of the charges denied him adequate assistance of counsel, because he was entitled to separate trials on the assault charge in Count 2 and the "felon in possession" charge in Count 4. Under Article I, section 11, we need not decide whether counsel's omission was deficient unless petitioner was prejudiced. *See Yeager v. Maass*, 93 Or App 561, 564, 763 P2d 184 (1988), *rev den* 307 Or 340 (1989) (issue of defective performance not reached where attorney's representation, even if inadequate, did not prejudice petitioner). In other words, the failure to seek separate trials must have had a "tendency to affect the result" of petitioner's criminal trial. *Aikens*, 122 Or App at 324. Accordingly, we first determine whether a motion for separate trials, if made, would have succeeded. *Haynes v. State of Oregon*, 121 Or App 395, 399, 854 P2d 949 (1993) (to determine whether petitioner was prejudiced, "we must resolve the underlying legal issue").

Joinder of charges for trial is governed by ORS 132.560, the permissive joinder statute. ORS 132.560(1)(b) allows joinder of offenses that are:

"(A)   Of the same or similar character;

"(B)   Based on the same act or transaction; or

"(C)   Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

In *State v. Meyer*, 109 Or App 598, 820 P2d 861 (1991), *rev den* 312 Or 677 (1992), we held that the defendant's two DUII and three "driving while suspended" offenses, spanning more than fours years, were sufficiently "similar" to be joined under ORS 132.560(1)(b)(A) because they were "all major traffic crimes occurring in the same county and involving [the] defendant's driving." 109 Or App at 603. In *State v. Rood*, 118 Or App 480, 848 P2d 128, *rev den* 317 Or 272 (1993), we held that charges of sodomy, sex abuse and endangering the welfare of a minor, involving different victims, were "of a similar character" under ORS 132.560-(1)(b)(A) because each charge alleged sexual conduct by the defendant toward male children he had brought to his home for purposes of adoption. 108 Or App at 482-83.

■    Here, we conclude that the earlier assault on Tim Neal in Count 2 is "of a similar character" to the later assault on Roy Neal in Count 3. Each attack stemmed from Tim Neal's drug debt, and petitioner, in each instance, used the same type of weapon in the same manner to "pistol whip" his target. As in *Rood*, both incidents involved similar behavior by petitioner toward victims who had come to his residence for similar underlying reasons. Furthermore, the two incidents occurred within a roughly four-hour period, much less than the span of several years in *Meyer*. The court therefore properly allowed joinder of Count 2 with Counts 1 and 3, pursuant to ORS 132.560(1)(b)(A).[2]

Petitioner concedes that the "felon in possession" charge in Count 4 arose out of "the same act" as the other three charges, and could be joined with those offenses under ORS 132.560(1)(b)(B). However, he argues that counsel

---

[2] Petitioner does not challenge the joinder of the assault charge in Count 3 with the manslaughter charge in Count 1. Those offenses were "based on the same act" of striking Roy Neal with a handgun, and were properly joined under ORS 132.560(1)(b)(B).

should have moved to sever that offense, as well as the assault charge in Count 2, on the grounds of prejudice. ORS 132.560(3) provides:

> "If it appears, upon motion, that the state or defendant is prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

We review the denial of a motion to sever under ORS 132.560(3) for abuse of discretion. *State v. Kitzman*, 129 Or App 520, 529, 879 P2d 1326, *rev allowed* 320 Or 492 (1994); *State v. Parker*, 119 Or App 105, 107, 849 P2d 1157, *rev den* 317 Or 584 (1993). A trial court has discretion to deny severance if evidence of the joined offenses would be mutually admissible in separate trials, or if the evidence is sufficiently simple and distinct to mitigate the dangers created by joinder. *Kitzman*, 129 Or App at 530; *Meyer*, 109 Or App at 604, *citing United States v. Werner*, 620 F2d 922, 927 (2d Cir 1980). "Mutually admissible" means "evidence of each crime could have been introduced on a separate trial of the other." *Werner*, 620 F2d at 929 n 7.

In a separate trial on the "felon in possession" charge (Count 4), evidence of each of the other charges would be admissible to show petitioner's possession of a firearm, because each count involves petitioner handling a gun. In separate trials on Counts 1, 2, and 3, petitioner's prior felony convictions in 1980 and 1981 would be admissible to impeach his credibility as a witness. OEC 609.[3]

Evidence relating to the attack on Roy Neal (Count 3) would be admissible in a separate trial on the manslaughter

---

[3] Petitioner testified in his criminal trial. As part of his burden in proving inadequate assistance of counsel, he must show that he would not have testified had the "felon in possession" charge been severed. Only then can he demonstrate that his prior convictions would not have been admissible in separate trials on the other counts. According to the post-conviction record, however, petitioner decided to testify because his attorney believed it essential to his defense, not because his convictions had already been introduced into evidence. The jury's awareness of petitioner's prior convictions apparently did not enter into that decision, and petitioner has failed to establish that he would not have testified in separate trials. Furthermore, petitioner does not claim as a separate ground for relief that trial counsel was constitutionally inadequate for pressuring him to take the stand.

charge (Count 1), and *vice versa*, because both charges arose from petitioner's single act. In a separate trial on those two charges (Counts 1 and 3), evidence of the earlier assault on Tim Neal in Count 2 would be admissible to show the Neals' relationship to petitioner, and thus their motive for kicking in his motel room door. "Sanitizing the evidence could have unfairly undermined [the witness'] credibility by painting an artificial picture of events. * * * A victim's relationship to the accused is relevant to explain [the victim's] conduct." *State v. Hall*, 108 Or App 12, 17, 814 P2d 172, *rev den* 312 Or 151 (1991).

In a separate trial on the Tim Neal assault (Count 2), evidence of petitioner's later use of a handgun to pistol whip Roy Neal (Count 3) would be admissible to prove petitioner's use of a firearm in the earlier attack. At trial, petitioner claimed that he struck Tim Neal with his fist, not a gun. Petitioner's use of a similar weapon in a similar manner only hours later is probative of whether he used a firearm or a fist on Tim Neal's head, and therefore is admissible on that issue.[4]

Because evidence of each charge would have been admissible in separate trials on each of the other charges, the trial court had discretion to deny severance. Accordingly, we cannot say that a motion to sever would have succeeded. Even assuming that petitioner's trial attorney was deficient in not moving for separate trials, that error did not have "a tendency to affect the result," and petitioner suffered no prejudice under Article I, section 11. We reach the same conclusion under the Sixth Amendment. Had defense counsel sought severance of the charges, we cannot say there is "reasonable probability" of a different result when petitioner would not have been entitled to separate trials. *Strickland*, 466 US at 668. The post-conviction court did not err in denying petitioner relief on the severance issue.

Petitioner also claims that his attorney's failure to object to the prosecutor's use of irrelevant evidence during

---

[4] *See Werner*, 620 F2d at 929 n 7 (evidence of *subsequent* similar acts or crimes admissible under FRE 404(b)); *State v. Wieland*, 131 Or App 582, 588-89, 887 P2d 368 (1994) (evidence of 1991 fires admissible to prove that 1986 fires were arson, under OEC 404(3)).

closing argument on the manslaughter charge denied him adequate assistance of counsel. The indictment charged manslaughter in the second degree. ORS 163.125.[5] It alleged that petitioner recklessly caused the victim's death by "shooting [the victim] with a firearm, which firearm discharged while [petitioner] attempted to strike another person with said firearm."

The prosecutor asserted in closing argument that petitioner had been "acting in a reckless manner the entire day," and that it was petitioner's "total reckless conduct for the entire day of December 31 into January 1, 1991" that caused the victim's death.

"Because if [petitioner] hadn't been dealing drugs or possessing drugs or had the drugs available, the Neals would never have been in contact with him. Chris Neal would never have taken Debbie Broyles's $100 and gone to his room to get cocaine. Tim Neal would never have been in an $800 bad drug deal where there was money owed to the [petitioner, who] * * * argued for his money with Tim Neal. You see, none of these things would have happened if [petitioner] weren't in the culture where drugs were around and important.

"* * * * *

"Shaniko Dix is the innocent victim * * * of the final result of [petitioner's] course of action. I've said it too many times, but it's so important here. The course of conduct of [petitioner], but for his acts, Shaniko Dix wouldn't be dead.

"* * * * *

---

[5] ORS 163.125 provides, in part:

"(1) Criminal homicide constitutes manslaughter in the second degree when:

"(a) It is committed recklessly[.]"

ORS 161.085(9) provides:

" 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

"It was reckless conduct of [petitioner] to put these acts into motion. It was reckless conduct for [petitioner] to possess a weapon when he knew that he was a convicted felon. It was reckless for [petitioner] to have [the weapon] in that room when he knew that Tim Neal was coming back. It was reckless to point it at Tim Neal, it was reckless to hit Tim Neal with it, it was reckless to point it at Chris Neal. That's where the recklessness comes in and if that isn't recklessness then maybe it's impossible to prove."

Petitioner claims that his alleged drug dealing, his prior convictions and his assaultive behavior toward Chris and Tim Neal were irrelevant to whether he was reckless in later striking Roy Neal with a handgun. Defense counsel's failure to object, he argues, was therefore deficient and prejudicial. The state responds that there was nothing improper about the prosecutor's argument because a jury legitimately may infer a defendant's mental state from his conduct at other times. *See State v. Rose*, 311 Or 274, 282, 810 P2d 839 (1991) (intent may be inferred from circumstantial evidence of defendant's behavior before the criminal act). The state assumes, however, that petitioner's earlier behavior was *relevant* to whether he acted recklessly at the time the gun discharged. For the following reasons, we reject that assumption.

We emphasize that the issue here is the *relevancy* of that evidence to the manslaughter charge, not its *admissibility* for other purposes. As discussed above, all charges were properly joined and the evidence at issue properly admitted in the trial of all four counts. However, admissibility for one purpose does not mean admissibility for all purposes, particularly a purpose prohibited by the Oregon Evidence Code. If petitioner's criminal record, alleged drug activities and assaultive behavior toward Chris and Tim Neal were not relevant to the issue of recklessness under OEC 401, then the prosecutor made improper use of that evidence in closing argument, despite its admissibility for other purposes.[6]

---

[6] For example, the prior convictions were admissible as impeachment evidence and to establish petitioner's status as an ex-convict for the "felon in possession" charge. They were not admissible to prove that petitioner had a general propensity to commit criminal acts. *See* OEC 404(3) (barring use of "other crimes" evidence for purpose of showing person acted in conformity with particular character trait).

██ ██ Under OEC 401,[7] evidence is relevant if it "even slightly increase[s] or decrease[s] the probability of the existence of any material fact in issue," and irrelevant when it has "no logical connection" to a fact or issue. *State v. Stone*, 104 Or App 534, 539-40, 802 P2d 668 (1990). Under ORS 161.085(9), "recklessly" means "a person is *aware of* and *consciously disregards* a substantial and unjustifiable risk that the result will occur." (Emphasis supplied.) To prove that petitioner recklessly caused the victim's death, the state had to establish that he was "aware of and consciously disregard[ed]" the risk that someone would get shot when he tried to pistol whip Roy Neal with a loaded handgun.

We fail to see how the earlier assault on Tim Neal, when the gun did *not* discharge, "even slightly increase[s] the probability" that petitioner was aware it might go off when he later struck Roy Neal. If the pistol had misfired at that time, the first attack would be directly probative of petitioner's knowledge of such a risk. But the gun did not discharge. Also, we cannot conceive how merely pointing the gun at Chris Neal, or how petitioner's possession of a gun as a convicted felon, logically relates to his awareness of the risk that resulted.

We reach the same conclusion regarding petitioner's alleged drug-dealing. In *State v. Middleton*, 131 Or App 275, 884 P2d 873 (1994), we held that the defendant's uncharged drug activities were irrelevant to the charge of carrying a concealed weapon. The issue there was whether an ice-pick found in the defendant's vehicle was a mason's tool or a "weapon." 131 Or App at 277, 281. Drug paraphernalia discovered in the defendant's pack was not probative of that issue because it was offered to show that the "defendant is a bad person, that he was participating in the drug world and that, therefore, he was carrying a concealed weapon." *Id.* at

---

Had the prosecutor argued that petitioner's criminal record showed a "propensity to commit crimes" (*i.e.* that petitioner had a "criminal character"), that would have been an improper use of otherwise admissible evidence.

[7] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

280, citing *Stone*, 104 Or App at 539.[8] We rejected that reasoning because the jury would need to find the defendant guilty of a drug offense in order to connect that evidence to the weapons charge. However, the defendant was not on trial for a drug offense, and the evidence was therefore irrelevant. *Id.*

> "When a jury has first to decide that a defendant is guilty of another crime * * * in order to connect the evidence [of the other crime] logically to the issue to be proved under the crime charged, that evidence, as a matter of common sense and as a matter of law, is irrelevant." *Stone*, 104 Or App at 540.

The same is true here. The prosecutor argued that petitioner was reckless when the gun discharged *because* he had been dealing drugs before the shooting. We find "no logical connection" between petitioner's alleged drug-dealing the previous evening and his "awareness and conscious disregard of" the risk that a stray bullet could kill someone in the room. The prosecutor focused on that evidence for the same reasons as in *Middleton*: to prove that petitioner was a "bad person," that he was "participating in the drug world" and therefore that he was reckless in causing the victim's death. However, as in *Middleton*, petitioner "was not on trial for trafficking in drugs or for any drug-related offense." 131 Or App at 280.

By urging the jury to find petitioner reckless on the basis of irrelevant evidence, the prosecutor made an improper argument. That does not, however, end our inquiry. Petitioner is entitled to relief only if, in failing to object, defense counsel neglected "to exercise reasonable professional skill and judgment" and his error had "a tendency to

---

[8] In *Stone*, the defendant was charged with "unauthorized use of a vehicle." To prove that he knew the car was stolen, the state offered two sawed-off shotguns found under the seat, shotgun shells found in the pockets of three passengers, and one passenger's affiliation with the "Crips" gang. An officer testified that Crips usually commit drive-by shootings from stolen cars and typically use sawed-off shotguns. 104 Or App at 537. We held the weapons and gang-related evidence irrelevant to prove that the defendant knew the car was stolen. That evidence was merely offered for the improper purpose of showing that the defendant was a "bad person about to participate in doing a bad thing" and therefore knew, or should have known, that the vehicle was stolen. *Id.* at 539.

affect the result of the prosecution." *Stevens*, 322 Or at 108, 110.

When a prosecutor makes an improper argument that is "likely to prejudice the jury unfairly," the trial court must take corrective action, provided defense counsel objects. *State v. Bolt*, 108 Or App 746, 749, 817 P2d 1322 (1991). In *Bolt*, the prosecutor referred in closing argument to several crimes of domestic violence that were not committed by the defendant. 108 Or App at 748-49. Those remarks, we held, "were highly likely to incite or inflame the jury to decide the case on an improper basis." *Id.* at 751.

> "[L]eading the jury's attention to the specific facts of other unrelated, particularly heinous crimes, as the prosecutor did here, creates the very strong likelihood that the jury's disgust and fear about those unrelated crimes will improperly influence its decision about the facts of the case then under consideration." *Id.* at 750.

As in *Bolt*, the prosecutor here focused the jury's attention on "the specific facts of other unrelated * * * crimes." Although this case differs from *Bolt* in certain respects,[9] we reach the same conclusion regarding the "likely" effect of the prosecutor's argument.

First, our review of the criminal trial record reveals no other, legitimate evidence offered on petitioner's awareness of the risks involved in striking someone with a loaded handgun. Second, the record arguably supported several defense theories justifying petitioner's response to the Neal brothers' violent invasion of his motel room.[10] However, by improperly focusing on petitioner's earlier, less excusable behavior, the prosecutor likely distracted the jury's consideration of those issues as they related to the manslaughter charge. Finally, although the charges were properly joined

---

[9] In this case, petitioner's drug activities, his prior convictions and his assaultive behavior toward the Neal brothers were not as "heinous" as the other crimes referred to in *Bolt*, were not committed by someone else, and were already admitted in evidence.

[10] To prove recklessness, the state had to establish that petitioner engaged in an "unjustifiable" risk. ORS 161.085(9). On the issue of justification, petitioner presented evidence and received jury instructions on self-defense and defense of others, ORS 161.209, ORS 161.215, ORS 161.219, defense of premises, ORS 161.225, defense of property, ORS 161.229, and choice of evils, ORS 161.200.

for trial and the evidence at issue properly admitted, the jury was not instructed on its duty to segregate the evidence of each offense and decide the charges separately.[11] By blending evidence of each charge under a single "recklessness" theory, the prosecutor compounded the risk of prejudice inherent in joining the charges. We conclude that the unchallenged use of irrelevant evidence to prove such a critical element was likely to have influenced the jury to decide the manslaughter charge on an improper basis.[12]

Accordingly, a defense objection would have forced the trial court under *Bolt* to take corrective measures, such as sustaining the objection, cutting off the argument and instructing the jury to disregard petitioner's prior behavior on the issue of recklessness. *See State v. Lundbom*, 96 Or App 458, 462, 773 P2d 11, *rev den* 308 Or 382 (1989) (failure to sustain objections to prosecutor's improper arguments required reversal); *State v. Seeger*, 4 Or App 336, 338, 479 P2d 240 (1971) (failure to instruct jury to disregard prosecutor's improper remark required reversal).

We acknowledge that failing to object during opposing counsel's closing arguments may, in some circumstances, represent a valid tactical decision. *State v. Brown*, 310 Or 347, 371-72, 800 P2d 259 (1990). In general, a defense attorney could legitimately conclude that interrupting a prosecutor's off-the-cuff, derisive remarks would only alienate the jury. However, these were not random comments. They embodied the entire thrust of the state's manslaughter case. The prosecutor had no other arguments to make on the "reckless" element of that charge.[13] Defense counsel's failure to

---

[11] For example, in *Kitzman*, the trial court alleviated the inherent prejudice of joinder by instructing the jury that "each charge, and the evidence pertaining to it, must be considered separately." 129 Or App at 530.

[12] We are unpersuaded by the state's contention that the trial court remedied any prejudicial effect by instructing the jury that the "attorney's statements and arguments are not evidence." The curative effect of such a general instruction is outweighed by the more specific risks of prejudice outlined above.

[13] In summing up that portion of his argument, the prosecutor conceded to the jury:

"That's where the recklessness comes in and if that isn't recklessness then maybe it's impossible to prove."

object was therefore not a "judgment call," as the post-conviction court ruled, but rather a failure to "exercise reasonable professional skill and judgment." Given the risk of prejudice discussed under *Bolt*, we also conclude that the error had "a tendency to affect the result of the prosecution" on the manslaughter charge.[14] Petitioner was therefore denied adequate assistance of counsel under Article I, section 11, and is entitled to relief from his manslaughter conviction. Because petitioner prevailed under the Oregon Constitution, we do not address his claim under the Sixth Amendment.

■　　Petitioner also claims that his attorney was constitutionally inadequate for failing to introduce Tim and Roy Neals's burglary convictions and arguing that petitioner was justified as a matter of law in using deadly force against Roy Neal.[15] Tim and Roy Neal each pled guilty to burglary in the second degree, for bursting into the motel room with the intent of assaulting petitioner. ORS 164.215.[16] Petitioner argues that their convictions conclusively established that they committed or attempted to commit "a felony involving the use or threatened imminent use of physical force against a person," as well as "burglary in a dwelling," either of which justified petitioner's use of deadly physical force.

ORS 161.219 provides, in part:

"[A] person is not justified in using deadly physical force upon another person unless the person reasonably believes that the other person is:

---

[14] The prosecutor's argument did not also taint the conviction for assault on Roy Neal (Count 3), as petitioner contends. Although both charges were "based upon the identical act," the assault charge did not require proof of recklessness, but rather that petitioner "knowingly" caused Roy Neal physical injury. It was undisputed that petitioner intended to strike Roy Neal. The only issue was whether he was justified in doing so. We do not believe the prosecutor's improper argument on "recklessness" was likely to influence the jury's consideration of petitioner's defense theories as they related to the assault charge.

[15] Because the failure to object to the prosecutor's argument entitles petitioner to a new trial on the manslaughter charge, we only consider this claim in relation to the conviction for assault on Roy Neal (Count 3).

[16] ORS 164.215(1) provides, in part:

"[A] person commits the crime of burglary in the second degree if the persons enters or remains unlawfully in a building with intent to commit a crime therein."

"(1)  Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or

"(2)  Committing or attempting to commit a burglary in a dwelling[.]"

The Neal brothers' convictions, petitioner argues, established the reasonableness of his belief under either ORS 161.209(1) or (2), and entitled him to use deadly force, as a matter of law, in defense of himself, defense of others and defense of premises. ORS 161.209; ORS 161.225. The failure to seek a judgment of acquittal on Counts 1 and 3 on those grounds, he claims, denied him adequate assistance of counsel. We disagree.

It is not enough that petitioner reasonably believed the Neal brothers were committing or attempting to commit a violent felony or a burglary in his dwelling. He must also have reasonably believed that the degree of force he used was necessary under the circumstances. ORS 161.209;[17] ORS 161.225; *State v. Haro*, 117 Or App 147, 150-51, 843 P2d 966 (1992), *rev den* 315 Or 443 (1993). Petitioner concedes that his actions were justified as a matter of law only if he reasonably believed that "striking Roy Neal with a firearm" was a necessary response to the Neal brothers' attack. However,

---

[17] ORS 161.209, which governs "self-defense" and "defense of others," provides in part:

"[A] person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, *and the person may use a degree of force which the person reasonably believes to be necessary for the purpose.*" (Emphasis supplied.)

ORS 161.225, the "defense of premises" statute, provides, in part:

"(1) A person in lawful possession or control of premises is justified in using physical force upon another person when and *to the extent that the person reasonably believes it necessary* to prevent or terminate what the person reasonably believes to be the commission of a criminal trespass by the other person in or upon the premises.

"(2) A person may use deadly physical force under the circumstances set forth in subsection (1) of this section only:

"(a) In defense of a person as provided in ORS 161.219; or

"(b) When the person *reasonably believes it necessary* to prevent the commission of arson or a felony by force and violence by the trespasser." (Emphases supplied.)

that is a *factual* question for the jury and cannot be established as a matter of law by the Neal brothers' convictions.

> " 'It is essential that the [self-defense] must not be excessive or disproportionate to the force involved in the attack upon the defendant, all to be judged by the jury from the standpoint of a reasonable man in the situation of the defendant at the time, under all the circumstances surrounding him.' " *State v. Wright*, 310 Or 430, 436, 799 P2d 642 (1990), *quoting State v. Rader*, 94 Or 432, 458, 186 P 79 (1919).

Because the Neal brothers' convictions said nothing, as a matter of law, about the reasonableness of petitioner's response, a motion for judgment of acquittal on that basis would not have succeeded. Therefore, defense counsel was not constitutionally deficient for failing to introduce the judgments of conviction or for neglecting to move for a judgment of acquittal on that basis.[18]

We hold that petitioner is entitled to post-conviction relief on the manslaughter charge. Accordingly, we do not address his sentencing claims relating to that conviction. Petitioner's remaining claims do not merit discussion.

Reversed and remanded with instructions to enter judgment granting post-conviction relief on manslaughter conviction; otherwise affirmed.

---

[18] The jury was aware of the Neal brothers' burglary convictions. Defense counsel also moved for judgment of acquittal on Counts 1 and 3 at the close of the state's case, although not on the basis now urged by petitioner.