Argued and submitted June 29, reversed and remanded on appeal; affirmed on cross-appeal December 14, 1994

# STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

# WILLIAM W. WIELAND,
*Respondent - Cross-Appellant.*

(CM93-0029; CA A79690)

887 P2d 368

Janet A. Metcalf, Assistant Attorney General, argued the cause for appellant - cross-respondent. With her on the briefs

were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David E. Groom, Deputy Public Defender, argued the cause for respondent - cross-appellant. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant is charged with the 1986 aggravated murder of his mother-in-law. On the state's pretrial motion, the trial court ruled that evidence of a fire on defendant's farm in 1984 was admissible and that evidence of fires on defendant's farm in 1991, after the murder, was not. The state appeals the exclusion of the evidence of the 1991 fires, and defendant cross-appeals the ruling to admit evidence of the 1984 fire.

Defendant is a dairy farmer. In June, 1986, there were three fires in defendant's house. The first started in the attic of the house, possibly caused by an electric exhaust fan. The second was intentionally set; crumpled paper was set afire in a bathroom drawer. The third fire, which destroyed the house, started in paper boxes that were in the dining room. Defendant's mother-in-law lived on the farm, although in a different house than defendant, his wife and two children. She was found murdered on the farm in mid-July, 1986. Defendant was charged with aggravated murder, for having killed the victim to conceal his identity as an arsonist. The state's theory is that defendant intentionally set the three fires in 1986, that the victim found out that he was the arsonist, and that defendant killed her to keep her from revealing his identity as the arsonist.

This case involves evidence of other fires on defendant's property. In 1984, there was a fire in a barn on defendant's dairy. The source of the fire was an electric fence box that defendant had recently installed. Defendant had worked as an electrician in the past. Defendant had earlier told an employee that the employee "would find $600 lying around" if the employee burned down the barn, and that, after the barn burned, defendant had said that the house would be next, because he knew how to get money from insurance companies.

In 1991, after defendant and his family had moved to Washington and purchased another dairy farm, there was a series of fires on the Washington farm. There had been a flood in 1990, resulting in substantial losses to the dairy from which it was unable to recover. On September 12, 1991, defendant gave notice to the seller that he intended to make no further payments on the mortgage. Early in the morning

of September 16, there were four fires on the farm; three in outbuildings, all of which were destroyed, and one in the house, which was extinguished before it caused significant damage. The fires were set using flammable liquids. A neighbor reported seeing defendant's vehicle leaving the scene.

Another fire at defendant's Washington farm was reported on November 18, 1991. It destroyed the house. Although defendant was no longer living at the farm, his truck had been seen at the property the evening before the fire. Fire investigators concluded that the fire had been intentionally set.

Before trial, the state sought a ruling that evidence of the 1984 fire and the 1991 fires would be admissible. In his response to the state's motion, defendant agreed that, because of the allegations in the indictment charging aggravated murder, evidence of the 1986 fires is admissible. The trial court ruled that evidence of the 1984 fire is admissible, but that evidence of the 1991 fires is not.

On appeal, the state challenges the trial court's exclusion of evidence of the 1991 fires on defendant's dairy farm in Washington. It argues that that evidence is admissible under OEC 404(3), which provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The state asserts that the evidence is independently relevant for a noncharacter purpose. It claims that the evidence is logically relevant to prove (1) that all of the 1986 fires were caused by arson, and (2) that the 1984, 1986 and 1991 fires were all set by a single arsonist, who is a member of defendant's immediate family. Defendant responds that the 1991 fires have no logical relevance to this case, because the state is not required to prove arson in this prosecution for aggravated murder. He also asserts that, because the state's theory is that defendant killed the victim in order to prevent her from revealing his identity as the person setting the fires

on his dairy in 1986, fires of which the victim had no knowledge are irrelevant. Because the victim had died by the time the 1991 fires occurred, she could not have been aware of them and, therefore, they cannot be relevant. Finally, he asserts that, even if the evidence of the 1991 fires is relevant, its probative value is outweighed by its prejudicial effect.

In *State v. Hampton*, 317 Or 251, 855 P2d 621 (1993), the Supreme Court discussed admissibility under OEC 404(3). It said:

"The general rule is that the prosecution may not introduce evidence of other crimes, wrongs, or acts committed by a defendant to suggest that, because the defendant is a person of criminal character, it is more probable that the defendant committed the crime for which he or she is on trial. OEC 404(3); *State v. Johnson*, 313 Or 189, 194, 832 P2d 443 (1992). Evidence of other crimes, wrongs, or acts may be admitted, however, if it is introduced to prove some other relevant purpose, such as to prove a defendant's motive for committing the crime. OEC 404(3); *State v. Johnson, supra*, 313 Or at 194.

"A three-part test, the first two parts of which are relevancy considerations and the third part of which involves the OEC 403 balancing test, governs the admissibility of evidence of other crimes, wrongs, or acts for 'other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident' under OEC 404(3):

" '(1) The evidence must be independently relevant for a noncharacter purpose [such as, in this case, proof of motive]; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403. Each of these requirements must be satisfied before uncharged misconduct evidence is admissible under OEC 404(3).' *State v. Johnson, supra*, 313 Or at 195 (footnotes omitted)." 317 Or at 253-54. (Footnotes omitted; brackets in original.)

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. The state's theory

of this case is that defendant killed the victim in order to conceal his identity as the person who set the three fires on his dairy in 1986. Defendant's theory is that the 1986 fires were either accidental, or they were set by someone other than him. In order to prove its theory, the state asserts that it must prove that the 1986 fires were caused by arson. It relies on what it calls the "doctrine of chances" in support of its argument that proof of the fires in 1991 tends to prove that all of the 1986 fires were deliberately set. Defendant argues that the doctrine of chances has never been adopted in Oregon and, therefore, cannot support admission of the evidence.

The Supreme Court explained the theory in *State v. Johns*, 301 Or 535, 552, 725 P2d 312 (1986):

> "Imwinkelried writes that Wigmore's theory [of admissibility of prior crime evidence involving the issue of *mens rea*] is based upon the doctrine of chances and under the doctrine the proponent uses uncharged misconduct evidence inductively and probabilistically:
>
>> " '* * * The doctrine teaches us that the more often the defendant performs the actus reus, the smaller is the likelihood that the defendant acted with an innocent state of mind. The recurrence or repetition of the act increases the likelihood of a mens rea or mind at fault. In isolation, it might be plausible that the defendant acted accidentally or innocently; a single act could easily be explained on that basis. However, in the context of other misdeeds, the defendant's act takes on an entirely different light. The fortuitous coincidence becomes too abnormal, bizarre, implausible, unusual or objectively improbable to be believed. The coincidence becomes telling evidence of mens rea.' Imwinkelried, Uncharged Misconduct Evidence 8, § 5.05 (1984) (footnotes omitted)."

We read *Johns* as accepting that theory of relevance for the purpose of proving that a defendant's charged conduct was not accidental, *i.e.* that the defendant acted with the requisite intent.

■      Here, the state seeks to use evidence of the 1991 fires for a different purpose: to prove that the 1986 fires were not accidental, but were all caused by arson. We agree with the state that the very fact that the 1991 fires occurred on defendant's property makes it more likely that the fires that

occurred on defendant's property in 1986 were not accidental. As Imwinkelried writes:

> "[E]ven anonymous acts can be logically relevant. Their admissibility depends upon the purpose for which the prosecutor or plaintiff offers the evidence. The proponent cannot offer anonymous acts to establish the defendant's identity as the perpetrator of the crime or tort. Anonymous acts have no probative value on the issue of identity. However, in principle, anonymous acts can be admitted either to prove the actus reus (the commission of a criminal or tortious act by someone) or to negative innocent intent. * * * For instance, as a matter of common human experience, it is objectively improbable that several accidental fires will occur at buildings owned by the same person within a short period of time. In an arson prosecution or an insurance case in which the insurer defends on the ground of the insured's arson, evidence of other fires is relevant to prove the incendiary origin of the fire giving rise to the suit. The evidence has a tendency in reason to increase the probability of human intervention and to disprove natural causation. The other fires are admissible to prove the actus reus of arson even if the proponent of the evidence cannot link the defendant to the other fires." Imwinkelried, *Uncharged Misconduct Evidence* § 2.05 (1984). (Footnotes omitted.)

Defendant's arguments do not persuade us that that reasoning does not apply here. His assertions that the evidence of fires in 1991 is not relevant in this case, because defendant is charged with aggravated murder and not with arson, and that the victim's knowledge that defendant was the arsonist is the only pertinent inquiry, miss the point of the evidence. The state's theory of aggravated murder is that defendant killed the victim to conceal his crime of arson. The state is entitled to attempt to prove that defendant committed arson in 1986, in order to show his motive for killing the victim. Because of its theory of the case, proof of arson is critical. Further, the victim's lack of knowledge of the fires in 1991 does not defeat the state's theory for admissibility. The state may use the evidence to make it more likely that the 1986 fires were caused by arson. The victim's knowledge about fires in 1991 has no bearing on that theory of logical relevance.

The evidence of the 1991 fires on defendant's dairy farm in Washington is logically relevant to show that it is more likely that the fires on defendant's dairy farm in Oregon

in 1986 were not accidental. As a matter of logic, the more often an unusual event occurs, the less likely it is that the occurrence is accidental. Because this evidence has a tendency to make the fact that the 1986 fires were caused by arson more likely, it is relevant. OEC 401. Because we conclude that the evidence is relevant for that purpose, we need not consider whether it might be relevant for the other purpose the state asserts, *i.e.* to show that all of the 1986 fires were caused by a single arsonist who is a member of defendant's immediate family.[1]

■■ Defendant argues that, even if evidence of the 1991 fires is relevant, its probative value is outweighed by its prejudicial effect. OEC 403. Prior crimes evidence is prejudicial if it invites the jury to decide the case on the improper basis that the defendant is a bad person. *State v. Johns, supra,* 301 Or at 558. The trial court determined that, if the evidence was relevant, it would be admissible under the balancing test of OEC 403. We review that decision under OEC 403 for abuse of discretion. *See State v. Hall,* 108 Or App 12, 814 P2d 172, *rev den* 312 Or 151 (1991); *State v. Bolt,* 108 Or App 746, 817 P2d 1322 (1991). Here, the trial court considered the factors set out in *State v. Johns, supra,* 301 Or at 557-58, and concluded that, if the evidence was relevant, it would find that the evidence was not so prejudicial as to be inadmissible. Defendant does not explain how the trial court erred in reaching that conclusion, and we fail to perceive a level of prejudice that would so outweigh the probative value as to constitute an abuse of discretion. The trial court did not abuse its discretion in determining that the probative value is not outweighed by the prejudicial effect.

Because we have concluded that evidence of the 1991 fires is relevant for a noncharacter purpose and that the trial court did not abuse its discretion in holding that the probative value is not outweighed by the prejudicial effect, the court erred in ruling that evidence of the 1991 fires is not admissible.[2]

---

[1] Defendant does not argue that, if admissible, the evidence may be used only for a limited purpose. Therefore, we express no opinion about that. We note, however, that the state's second theory for admissibility was not asserted below.

[2] This conclusion is not intended to preclude defendant from renewing his OEC 403 objection, depending on the development of evidence at trial.

On cross-appeal, defendant challenges the trial court's ruling that evidence of the 1984 fire is admissible. He asserts that the evidence is not relevant, based on the same arguments that he raised regarding evidence of the 1991 fires. We reject his arguments for the same reasons that we rejected them on the appeal.

Defendant's only other argument for reversing the trial court's ruling on admitting evidence of the 1984 fire is that the prejudicial effect of the evidence outweighs its probative value. As it did in considering the evidence of the 1991 fires, the trial court considered the appropriate factors in balancing the probative value of evidence of the 1984 fire against its prejudicial effect, and determined that the evidence is admissible. The court did not abuse its discretion.

Reversed and remanded on appeal; affirmed on cross-appeal.