Argued and submitted May 30, reversed and remanded for new trial
October 2, 1996

# STATE OF OREGON,
*Respondent,*

*v.*

# ROSA B. REYES,
*Appellant.*

# (T94-08-3644; CA A89319)

924 P2d 866

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Haselton, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII). ORS 813.010. Defendant assigns error to the trial court's failure to exclude evidence regarding a Horizontal Gaze Nystagmus (HGN) test and an Intoxilyzer breath test that were administered eight months before the arrest that gave rise to this appeal. We reverse.

This appeal arises from defendant's arrest for DUII on August 8, 1994. On that date, Officer Webb stopped defendant because the vehicle she was driving had a defective tail light. When he approached defendant to talk to her about the traffic infraction, he noticed a strong odor of alcohol. He asked defendant to perform field sobriety tests (FSTs), which she did.

The first FST that defendant performed is known as the "Walk and Turn Test." OAR 257-25-020(1)(b). Webb instructed defendant to take nine steps in a straight line, placing the heel of her front foot against the toe of her back foot, turn around, and walk in a similar fashion in the opposite direction. Webb testified that defendant stepped off the imaginary straight line on the fourth step in each direction, but otherwise performed the test as instructed.

Defendant then performed the modified "Romberg Balance Test." OAR 257-25-020(1)(d). Webb instructed defendant to stand with her feet together, arms at her sides, eyes closed and head tilted back, and then to count to 30 in 30 seconds. Webb testified that defendant performed the test as instructed and accurately judged time as she counted to 30 but swayed very noticeably from front to back as she did so.

Then defendant performed the "One Leg Stand" test. OAR 257-25-020(1)(c). Webb instructed defendant to stand with her heels together and arms at her sides. He told her to raise one foot six inches off the ground and count to 30, while looking at the raised foot. Webb testified that defendant was able to keep her foot raised during the test, but did not look at her elevated foot as instructed, raised her arms from her sides for balance and counted to 30 very fast.

After defendant performed the FSTs, Officer Huffman arrived on the scene. Webb asked him to perform an HGN test on defendant, because Webb had not administered that test before. Huffman asked defendant if she had had anything to drink, and she replied that she had consumed about a six-pack of beer. He then administered the HGN test.

The HGN test measures the onset of nystagmus, or involuntary oscillation, of the eye as it tracks a moving stimulus, such as the tip of a pen. The test measures: whether the subject's eyes can track the stimulus with smooth pursuit as it moves from side to side; whether there is nystagmus at maximum deviation in each eye; and whether the onset of nystagmus occurs before 45 degrees in each eye. OAR 257-25-020(1)(a). The test therefore consists of six parts, three for each eye, and the presence of nystagmus in four or more parts indicates that the subject may be under the influence of alcohol. *State v. O'Key*, 321 Or 285, 294-95, 899 P2d 663 (1995); *State v. Fisken*, 138 Or App 396, 398 n 1, 909 P2d 206 (1996).

After Huffman administered the HGN test, Webb arrested defendant for DUII. Defendant subsequently refused to take an Intoxilyzer breath test.

Before trial, defendant moved to suppress evidence that previously, on December 4, 1993, Huffman had administered an HGN and an Intoxilyzer breath test to defendant in an unrelated matter. Defendant argued that the evidence the state sought to introduce regarding the 1993 tests was inadmissible because: (1) it was irrelevant, OEC 401, 402; (2) it was evidence of prior misconduct that did not conform to the requirements for admission of such evidence, OEC 404(3); (3) the state's attempted use of HGN test evidence to establish defendant's blood alcohol content (BAC) was improper, *O'Key*, 321 Or at 298; and (4) in all events, the 1993 evidence was inadmissible because the danger of unfair prejudice substantially outweighed its probative value, OEC 403.

The state responded that the results of the 1993 tests were relevant to whether defendant was under the influence of intoxicants on August 4, 1994, when she was arrested for the DUII in this case. The state contended that

Huffman was prepared to testify that: (1) the Intoxilyzer breath test on December 4, 1993, measured defendant's BAC to be 0.11 percent; (2) in his opinion, based on a comparison of the 1993 and 1994 HGN tests, defendant was at least as intoxicated on August 4, 1994 as she was on December 4, 1993; and (3) therefore, defendant's BAC was at least 0.11 percent on August 4, 1994.

The trial court denied defendant's motion to exclude all evidence regarding the 1993 tests, but limited the scope of Huffman's testimony in that regard. The court ruled that Huffman could testify that the 1993 Intoxilyzer test showed that defendant was intoxicated under Oregon law. However, the court ruled that Huffman could not describe the reason he had administered the 1993 tests to defendant or the numerical BAC result from the 1993 Intoxilyzer breath test. Nor could Huffman testify as to whether defendant had been arrested or convicted of DUII arising from the 1993 tests.

The court's ruling effectively prohibited the state from proceeding with a case under ORS 813.010(1)(a), which provides that a person commits the offense of DUII if that person drives a vehicle while his or her BAC is 0.08 percent or more. That limited the state's case to whether defendant was guilty of DUII under ORS 813.010(1)(b), which provides that a person commits the offense of DUII if that person drives a vehicle while under the influence of intoxicating liquor.[1] Furthermore, the court ruled that it would not instruct the jury on the law under ORS 813.010(1)(a). In effect, the court's rulings prevented the jury from receiving any quantitative BAC evidence or considering its legal significance.

Pursuant to the court's pretrial rulings, Huffman testified to the following at trial:

---

[1] ORS 813.010(1) provides, as relevant:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person * * *; [or]

"(b) Is under the influence of intoxicating liquor or a controlled substance."

"Q: It looks like, December 4, 1993, did you have contact with the defendant in this case?

"* * * * *

"A: Yes, I did.

"Q: And did you do the Horizontal Gaze Nystagmus test on the defendant that evening?

"A: Yes, sir.

"Q: And was she under the influence of intoxicants?

"A: In my opinion, she was under the influence of intoxicants.

"* * * * *

"Q: And did you have her take a blood alcohol test with the breathilyzer?

"A: Yes, I did.

"Q: And did that show that she was under the influence of intoxicants under Oregon law?

"* * * * *

"Q: Without getting into specific numbers?

"* * * * *

"A: Yes, sir.

"Q: And that was the evening you did the HGN on her, in December?

"A: Yes, sir."

Huffman then compared the results of the 1993 and 1994 HGN tests:

"Q: Did you get a chance to do the Horizontal Gaze Nystagmus test on the defendant [on] August [4, 1994], the incident we are here for today?

"A: Yes, sir.

"* * * * *

"Q: In December of 1993, when the defendant was under the influence of intoxicants, how did her eyes move?

"A: She had lack of smooth pursuit, when I observed that at that time.

"Q: And was that in both eyes?

"A: That was in both eyes.

"Q: Can you compare the December, her eyes in December, versus the way they were in August when you checked her?

"A: In August, she also had lack of smooth pursuit in both eyes.

"Q: Was it more, less [or] the same?

"A: I would say about the same.

"* * * * *

"Q: In December, when the defendant was under the influence of intoxicants, how pronounced was her nystagmus at maximum deviation?

"A: It was very easy to see, very noticeable.

"* * * * *

"Q: How bad [was it] in August?

"A: In August, it was the same way, very distinct, very noticeable

"Q: Can you compare the two—more or less or the same?

"A: I would say about the same.

"* * * * *

"Q: In December, when she was under the influence of intoxicants, about where, what angle, did the nystagmus start?

"A: I would say it was just prior to 45 degrees or right at 45 degrees.

"Q: And how about in August?

"A: The same—same location."

Defendant was subsequently convicted of DUII. On appeal, defendant argues that the trial court erred in admitting the evidence about the 1993 tests and in allowing Huffman to testify as to his opinion of whether defendant was

under the influence of intoxicants on August 4, 1994, based on his comparison of the 1993 and 1994 tests. Defendant no longer disputes that the evidence was "relevant." OEC 401. However, defendant reiterates the other three arguments she made to the trial court: First, defendant argues that the evidence regarding the 1993 tests constituted evidence of prior misconduct that is inadmissible under OEC 404(3). Next, defendant argues that the 1993 test evidence, in conjunction with Huffman's opinion, constitutes an improper use of HGN test evidence to establish defendant's BAC. *O'Key*, 321 Or at 289. Finally, defendant argues that the danger of unfair prejudice posed by admitting evidence of the 1993 tests substantially outweighs any probative value, and the evidence is therefore inadmissible under OEC 403.

██ We first consider defendant's argument under OEC 404(3), which provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

A three-part test governs admissibility of evidence of "other crimes" or "uncharged misconduct" under OEC 404(3):

> "(1) The evidence must be independently relevant for a non-character purpose; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403." *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992) (footnotes omitted).

Defendant concedes the first two points.[2] Therefore, defendant's argument under OEC 404(3) is essentially equivalent to her argument under OEC 403: that the court erred in

---

[2] Defendant concedes that the evidence at issue is relevant to whether she was intoxicated on August 4, 1994, a noncharacter purpose. Defendant does not challenge that the state offered sufficient evidence that she was intoxicated under Oregon law when Huffman tested her in 1993, and did not offer rebuttal evidence on that point at trial.

admitting the evidence at issue because its probative value was substantially outweighed by the danger of unfair prejudice.

OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

We review for abuse of discretion a trial court's admission of evidence over an OEC 403 objection. *State v. Johns*, 301 Or 535, 559, 725 P2d 312 (1986); *State v. Wieland*, 131 Or App 582, 589, 887 P2d 368 (1994).

Before trial, the court ruled that Huffman could not refer to whether defendant had been arrested or convicted for DUII arising from the 1993 HGN and Intoxilyzer tests. However, the court did allow Huffman to testify that he performed the HGN and Intoxilyzer tests on defendant in 1993 and that the Intoxilyzer showed that she was intoxicated under Oregon law. We agree with defendant that, to the extent the court allowed Huffman to testify about the 1993 tests, the purported exclusion of evidence that she was arrested for DUII in 1993 was illusory. Under the circumstances, the jury could not rationally be expected to avoid inferring that she was arrested for DUII or another alcohol-related offense in 1993. Because the court had already concluded that that fact was unduly prejudicial, a conclusion with which we agree, it abused its discretion by admitting into evidence the 1993 test results, which naturally and inevitably led to the inference that defendant was arrested for DUII in 1993.

In addition to the prejudicial effect of the 1993 results, there is a high probability that the comparison between the 1993 and 1994 HGN tests misled the jury. As the Supreme Court stated in *O'Key*,

> "[e]vidence perceived by lay jurors to be scientific in nature possesses an unusually high degree of persuasive power. The function of the court is to ensure that the persuasive appeal is legitimate." 321 Or at 291 (footnote omitted).

Under the circumstances here, in which the HGN test results were compared and opined to be identical, it is highly unlikely that the jury could weigh the probative value of the 1994 HGN test result appropriately. The probative value of the 1993 HGN test result was relatively low, because the state offered no evidence regarding the correlation between results of distinct HGN tests. The 1993 HGN test evidence had a relatively high probability of misleading the jury, because the context in which the two sets of HGN results were presented strongly implied that no other conclusion could be reached but that defendant was intoxicated as a matter of law on August 4, 1994. Therefore, the probative value of the 1993 HGN result, and its comparison to the 1994 HGN result, is substantially outweighed by the danger of that evidence misleading the jury.

We also conclude that the probative value of the 1993 test results is substantially outweighed by the danger of that evidence confusing the issues. When evidence of uncharged misconduct is admitted, the risk is that

> "the jury will convict for crimes other than those charged, or because the accused deserves punishment for [her] past misdeeds." *State v. Pinnell*, 311 Or 98, 106, 806 P2d 110 (1991).

In this case, the probative value of Huffman's testimony that he had previously tested defendant and found her to be under the influence of intoxicants is substantially outweighed by the danger that the jury would be motivated to punish defendant for her conduct in 1993.[3] For these reasons, we hold that the court erred by admitting into evidence the 1993 tests and their results over defendant's OEC 403 objection.

The state argues that even if the trial court erred by admitting the evidence in question, that error is harmless and does not merit reversal. Evidentiary error is harmless and does not require reversal if there is "little likelihood" that

---

[3] The excerpted portion of Huffman's testimony supports that conclusion. 143 Or App at 599-600. In that part of his testimony alone, the jury heard five times that defendant was "under the influence of intoxicants" when the officer tested her in 1993. Furthermore, in addition to the references in the excerpted testimony, the jury repeatedly heard references to the fact that Huffman tested defendant in 1993 and the results showed her to be legally intoxicated.

the error affected the verdict. OEC 103(1); *State v. Parker*, 317 Or 225, 233-34, 855 P2d 636 (1993). Reviewing the evidence the jury had before it, there is more than a "little likelihood" that the error affected the verdict. Although defendant admitted that she drank a six-pack of beer on August 4, 1994, Huffman did not ask her, and the state did not offer any evidence regarding, the time period in which she consumed that amount. Defendant did not perform the FSTs correctly, but the extent to which she failed those tests was not egregious. In addition, the officers testified that she did not stumble, stagger or slur her words. Webb testified that he did not observe any bad driving by defendant. On the other hand, defendant refused to take a breath test, and Huffman opined that her performance on the 1994 HGN test indicated that she was under the influence of intoxicants. In the light of all the evidence, the erroneously admitted evidence could well have effected the verdict. The evidentiary error in this case was not harmless and, therefore, requires reversal.

Defendant's remaining assignment of error, that the trial court did not have jurisdiction, is without merit.

Reversed and remanded for a new trial.