Freddy Leon WILDMAN,
Petitioner–Appellant,

·v.

Dan JOHNSON, Respondent–Appellee.

No. 00–35355.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 2001

Filed Aug. 16, 2001

Mark Bennet Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for the petitioner-appellant.

Daniel J. Casey, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

Before: McKEOWN, W. FLETCHER and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge:

Appellant Petitioner Freddy Leon Wildman ("Wildman"), convicted in Oregon state court of attempted murder, assault, arson and menacing, appeals the federal district court's order dismissing his petition for habeas corpus. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. *See Dows v. Wood*, 211 F.3d 480, 482 (9th Cir.), *cert. denied*, 531 U.S. 908, 121 S.Ct. 254, 148 L.Ed.2d 183 (2000). Because Wildman's habeas petition is without merit, we affirm the district court's order.

## BACKGROUND

On December 11, 1991, Wildman was convicted in Oregon state court of one count of attempted murder, one count of first-degree assault, two counts of arson, and one count of menacing. The convictions were supported by evidence of domestic violence against Wildman's former wife, Faye Wildman. Evidence at trial established that on or between August 1, 1989 and January 1, 1990, Wildman committed arson by starting a fire which damaged the interior of the home in which Wildman and his wife were living. In late October or early November 1990, Wildman committed menacing by holding a gun to Mrs. Wildman's head, and discharging the gun close to her head.

On the evening of May 1, 1991, after arguing with Mrs. Wildman, Wildman started a fire outside their home. Mrs. Wildman asked Wildman to leave. When he refused, Mrs. Wildman attempted to leave herself. As she was trying to open her car door, Wildman pushed her to the ground, poured a flammable liquid on her and ignited her with a lighter. Wildman was also engulfed in the resulting flames. Wildman directed Mrs. Wildman to roll on the ground to put out the flames. When that didn't work, Wildman doused the flames with a garden hose.

Wildman drove himself and Mrs. Wildman to the hospital. While en route, the two agreed to report that their burns resulted from an accident. In the days following the incident, Wildman told several different versions of how he and his wife were injured. Mrs. Wildman, however, did not change her story until May 8, 1991. In an interview with an Oregon detective, Mrs. Wildman related that after an argument, Wildman pushed her to the ground, doused her with gasoline, and lit her with a lighter.

Before trial, the State moved to consolidate charges against Wildman from four separate indictments. The court granted the State's motion, but severed a felon-in-possession charge connected with Wildman's menacing count.

During Wildman's first trial, his counsel did not call a ballistics or arson expert. After Wildman's conviction, the trial court sentenced him to 72 months on one arson conviction, 40 months on the other arson conviction, 72 months on the attempted murder conviction, 260 months on the first-degree assault conviction, and 12 months on the menacing conviction. All sentences were ordered to be served consecutively.

On October 13, 1992, Wildman was tried on the felon-in-possession charge. For that trial, Wildman's trial counsel retained a ballistics expert. The ballistics expert did not physically examine the bullet hole discovered in a wall in the Wildmans' home. However, he testified that a gun held two to three feet off the floor and three feet away from the wall could not have followed the near-horizontal path reflected in a photograph depicting the trajectory of the bullet hole. The expert's testimony contradicted Mrs. Wildman's testimony that Wildman pushed her to the floor; held a gun to her head which was three feet above the floor and three to four feet away from the wall; and fired the gun, resulting in the bullet hole. At the conclusion of the trial, the jury returned a verdict of not guilty.

Wildman directly appealed the convictions arising out of the first trial, asserting one assignment of error pertaining to his sentencing, which is not at issue in Wildman's present habeas petition. The Oregon Court of Appeals affirmed Wildman's sentence without opinion. Wildman did not seek review of that decision in the Oregon Supreme Court.

Wildman subsequently sought post-conviction relief in state court. Wildman alleged ineffective assistance of trial counsel

based on counsel's alleged failure to investigate, interview, and subpoena witnesses; to preserve and present material and physical evidence that was available; and to investigate, obtain, and present crucial expert testimony regarding arson and ballistics. The petition also alleged ineffective assistance of appellate counsel based on the failure to present and argue upon appeal any issue other than inappropriate sentencing. After a hearing on the matter, the state court denied Wildman's petition for post-conviction relief.

The state court's denial was supported by an affidavit from Robert D. Street, Wildman's trial counsel. In his affidavit, Street averred, "We investigated every possible angle of Mr. Wildman's case, including hiring an expert to examine the scene of the crime. I do not believe we had left any stone unturned."

Through his court-appointed attorney, Wildman appealed the post-conviction judgment to the Oregon Court of Appeals. The attorney filed a *Balfour*[1] brief, to which Wildman added a pro se section. The court summarily affirmed the post-conviction trial court judgment. Wildman's attorney then filed a *Balfour* petition for review to the Oregon Supreme Court, to which Wildman also added a pro se section. The Oregon Supreme Court denied review.

Wildman then filed his petition for writ of habeas corpus with the federal district court. In his petition, Wildman alleged inadequate proof on the menacing claim, inadequate assistance of trial counsel, inadequate assistance of appellate counsel, improper joining of indictments, and imposition of a sentence which exceeded the maximum allowed under state law.

The district court, although using a different standard of review, adopted the Magistrate Judge's Report and Recommendation. By adopting the modified Report and Recommendation, the district court ruled that the post-conviction state court did not fail to follow established law in finding that Wildman's trial counsel conducted a full and proper investigation, pursued a reasonable trial strategy, and provided adequate legal representation. The district court also ruled that the post-conviction state court did not fail to follow established law in finding that Wildman received adequate assistance of appellate counsel. The district court further held that Wildman's remaining claims were procedurally defaulted because they were not raised before the post-conviction state court. In making its rulings, the district court relied on the "reasonable jurist" standard to review the state court's post-trial proceedings.

The district court entered judgment dismissing Wildman's habeas petition; Wildman filed a timely notice of appeal; and the district court issued a certificate of appealability on the exhaustion and ineffective assistance of counsel claims.

## DISCUSSION

 We review a district court's grant or denial of habeas corpus relief *de novo*. *See Sanders v. Ratelle,* 21 F.3d 1446, 1451 (9th Cir.1994). In a federal habeas action, a claim of ineffective assistance of counsel presents mixed questions of fact and law and therefore receives *de novo* review. *Id.* Findings of fact of a magistrate judge adopted by the district court are reviewed under the clearly erroneous standard. *Id.* at 1452.

1. In *State v. Balfour,* 311 Or. 434, 814 P.2d 1069, 1080 (1991), the Oregon Supreme Court held that appointed counsel need not withdraw even though he does not find any meritorious issues for appeal.

## A. Review under the AEDPA

Wildman's federal habeas petition, which he filed on April 18, 1997, is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996). *See Delgado v. Lewis*, 223 F.3d 976, 979 (9th Cir.2000) (the AEDPA applies to federal habeas petitions filed after April 1, 1996). Under the relevant provision of the AEDPA, a federal court may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court resolved much of the debate as to the interpretation of 28 U.S.C. § 2254(d)(1). *See, e.g., Van Tran v. Lindsey*, 212 F.3d 1143, 1149 (9th Cir.), *cert. denied*, 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). In *Williams*, the Supreme Court explained that the "contrary to" and "unreasonable application" clauses have distinct meanings and generally apply to different circumstances, although in certain instances the two concepts may overlap. *See Williams*, 529 U.S. at 404–12, 120 S.Ct. 1495.

The parties agree that Wildman's habeas claims of ineffective assistance of counsel are governed by the "clearly established federal law" standard articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Weighall v. Middle*, 215 F.3d 1058, 1061–62 (9th Cir.2000), we held that habeas petitions governed by *Strickland* should, in most instances, be analyzed under the "un-reasonable application" clause of § 2254(d).[2]

Under the "unreasonable application" clause, a federal court should grant the writ when the state court's application of clearly established federal law is "objectively unreasonable." *See Williams*, 529 U.S. at 409, 120 S.Ct. 1495. Although the Supreme Court did not define "unreasonable" in *Williams*, we have held that a judgment is "objectively unreasonable" when it is clearly erroneous. *See Van Tran*, 212 F.3d at 1152–54. Petitioner cannot meet his burden by simply convincing the federal court that he has the better of two reasonable legal arguments. *Id.* at 1153. The court, however, must reverse a state court's decision as involving an "unreasonable application" of clearly established federal law when an independent review of the legal question leaves the court with a "firm conviction" that the state court committed clear error by rejecting the correct application of federal law and adopting an erroneous one. *Id.* at 1153–54.

The district court decision in this case was rendered before the Supreme Court's decision in *Williams*. As a result, the district court applied the "reasonable jurist" standard, which *Williams* expressly rejected. *See* 529 U.S. at 409, 120 S.Ct. 1495. We must therefore decide whether the district court's judgment can be affirmed under current Supreme Court precedent. *See Weighall*, 215 F.3d at 1062 (affirming under *Williams* standard even though the district court used the "reasonable jurist" standard).

---

**2.** In *Weighall,* we recognized that there may be instances involving *Strickland* claims that do not fit in the "unreasonable application" prong but did not provide further detail. 215 F.3d at 1062 n. 6. However, Wildman does not allege that his *Strickland* claims fall outside the unreasonable application prong, and his petition fits within the "unreasonable application" framework.

## B. Ineffective Assistance of Counsel

 To prevail on a claim of ineffective assistance of counsel, the petitioner "must show that his trial counsel's performance fell outside a wide range of reasonableness and that he was prejudiced by that performance." *Id.* "There is a strong presumption that counsel's conduct falls within [this] wide range of reasonable professional assistance . . . ." *Downs v. Hoyt*, 232 F.3d 1031, 1038 (9th Cir.2000), *cert. denied,* — U.S. —, 121 S.Ct. 1665, 149 L.Ed.2d 646 (2001). "Prejudice occurs where there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Weighall,* 215 F.3d at 1062 (citation and internal quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation and internal quotation omitted).

### 1. Ineffective Assistance of Trial Counsel

Wildman asserts that the district court erred in ruling that the post-conviction state court followed established law in holding that Wildman received adequate assistance of trial counsel. Wildman argues that his trial counsel's representation was constitutionally deficient. Wildman contends that his counsel failed to conduct an adequate investigation by neglecting to retain ballistic and arson experts at his first trial. The state court, however, found that Wildman's "trial counsel conducted a full and proper investigation in the underlying criminal case" and that "trial counsel's strategy was reasonable." The state court concluded as a matter of law that Wildman "received adequate assistance of trial counsel and appellate counsel." The post-conviction state court further concluded that Wildman's "rights were fully protected" and he "was not denied any rights under the state or federal constitution that would entitle him to post-conviction relief."

Wildman asserts that the fact that his trial counsel retained an expert to assist in his second "felon-in-possession" trial, but did not retain any experts to testify during his first trial on the other charges, required the state court to make further inquiry. However, Wildman had the burden of establishing before the state court that trial counsel should have reasonably retained a ballistics or arson expert in the first trial, and that he was prejudiced by his trial counsel's failure to do so. *See Laboa v. Calderon,* 224 F.3d 972, 981 (9th Cir.2000) (holding petitioner has the burden of proof under the *Strickland* test).

 Trial counsel acted reasonably by retaining an expert, although not a ballistics or arson expert, to investigate the crime scene. Trial counsel could reasonably rely on this initial expert investigation and Wildman did not show that the expert retained revealed that further investigation would be productive. *See Harris v. Vasquez,* 949 F.2d 1497, 1525 (9th Cir. 1990) (finding trial counsel's reliance on properly selected experts within the wide range of professionally competent assistance).

Additionally, the facts underlying Wildman's conviction for attempted murder, assault, and arson did not involve a firearm. A ballistics expert's testimony therefore would not have provided a viable defense to these charges.

Nevertheless, both the menacing charge, of which Wildman was convicted in the first trial, and the felon-in-possession charge, of which he was acquitted in the second trial, involved a firearm. Both charges were based on essentially the same facts—that Wildman threatened his wife and discharged a firearm close to her head. In the second trial, trial counsel retained a ballistics expert who testified that the trajectory of the bullet that entered the wall was inconsistent with Mrs.

Wildman testimony regarding the position of the gun when it was fired. The jury, thereafter, returned a verdict of acquittal in the second trial.

The fact that Wildman was acquitted on the felon-in-possession charge when the ballistic expert testified, however, does not compel a conclusion that counsel was constitutionally required to retain a similar expert when defending against the menacing charge in the first trial. Wildman's acquittal on the felon-in-possession charge may not have been the result of the ballistics expert's testimony, as Wildman contends, but the result of some other reason, such as jury mistake or lenity, *see United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), or the failure to believe the prosecution's evidence on a basis unrelated to the testimony of the ballistics expert.

Moreover, the menacing charge, only one of several in the first trial, was relatively minor in comparison to the first degree assault charge. Trial counsel might reasonably have wanted to avoid the impression that he was trying to distract the jury's attention from the more serious charges by using expert testimony to focus on the details of the less important charge. Wildman's disagreement with trial counsel's tactical decision cannot form the basis for a claim of ineffective assistance of counsel. *See Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir.1984). Wildman therefore has not shown that trial counsel's actions in not retaining a ballistics or arson expert fell outside the wide range of professional competence.

 Finally, Wildman has not shown that his case was prejudiced as a result of not retaining an arson expert. Wildman offered no evidence that an arson expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish preju-

dice. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir.1997) (speculating as to what expert would say is not enough to establish prejudice).

██ Wildman contends, however, that his failure to provide evidence to the post-conviction state court that expert testimony was required in the first trial was due to his trial counsel's misleading statements to the court. Wildman asserts that his trial counsel misled the state court into believing that he had consulted a ballistics and arson experts when trial counsel stated in his affidavit that he hired an "expert to examine the scene of the crime." In a subsequent letter, Wildman's trial counsel clarified that he did not hire a ballistics or arson expert.

██ The district court found that the letter from Wildman's trial counsel could not be considered. Pursuant to 28 U.S.C. § 2254(e)(2), Wildman was precluded from receiving an evidentiary hearing due to his failure to develop the factual basis for his claim in state court. In *Williams v. Taylor*, 529 U.S. 420, 437–40, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), the Supreme Court held that a petitioner is barred from having an evidentiary hearing under § 2254(e)(2) when petitioner did not exercise diligence in developing the facts in the relevant state court proceedings and petitioner has not shown, by clear and convincing evidence, that no reasonable fact finder would have found petitioner guilty of the underlying crime but for the alleged constitutional error.

Wildman's claim that his trial counsel's misleading affidavit lulled him into inaction is unavailing. Trial counsel's letter did not contradict his affidavit. The affidavit did not specify the type of expert retained to examine the scene of the crime, and the letter never disclaimed counsel's statement that he retained a crime scene expert. Even though the state court allowed him

to develop the factual record, Wildman never developed a factual basis for his assertions. Wildman, therefore, failed to exercise diligence in developing the record before the state court.

In light of the foregoing, the district court did not err in concluding that Wildman's attorney's letter should not be considered. For the same reasons, even if this Court considered the letter, the state court's post-conviction findings and conclusions that Wildman was not denied his rights to effective assistance of trial counsel are not clearly erroneous. Pursuant to the AEDPA, we are unable to find otherwise.

### 2. Ineffective Assistance of Appellate Counsel

■ Wildman also asserts that the district court erred in ruling that the post-conviction state court followed established law in finding that Wildman received adequate assistance of appellate counsel. Wildman argues that his appellate attorney failed to raise two meritorious issues on direct appeal: 1) that the charges against him in the first trial were misjoined; and 2) that the consecutive sentences given to Wildman based on his convictions for attempted murder and first degree assault were illegal under Oregon law, and therefore violated due process under the Fourteenth Amendment. Wildman, however, never specifically raised these issues below and has not provided any valid reason for failing to do so. These arguments therefore are not properly before us. *See Ortiz v. Stewart,* 149 F.3d 923, 930–31 (9th Cir.1998), *cert. denied,* 526 U.S. 1123, 119 S.Ct. 1777, 143 L.Ed.2d 806 (1999) (noting that appellate court will not generally consider habeas issue on appeal that was not raised in state court or federal district court).

■ Nevertheless, even if Wildman properly raised these arguments below,

they are without merit. In *Jones v. Smith,* 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000), we held that appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal. *See also Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir.1985) (failing to raise meritless argument on appeal does not constitute ineffective assistance of counsel). Wildman cannot sustain his claim for ineffective assistance of appellate counsel because the issues he raises are without merit.

■ Under Oregon law, joinder of offenses is permitted when the offenses are: 1) "[o]f the same or similar character;" 2) "[b]ased on the same act or transaction;" or 3) "[b]ased on two or more acts or transactions connected together or constituting a common scheme or plan." *Warren v. Baldwin,* 140 Or.App. 318, 915 P.2d 1016, 1021 (1996) (quoting Oregon Revised Statutes § 132.560(1)(b)). Wildman's charges of attempted murder, arson and menacing were properly joined under Oregon law because they involve similar types of life-threatening domestic abuse against Mrs. Wildman. *See Warren,* 915 P.2d at 1021 (finding charges to be of a "similar character" when the incidents underlying the charges involve similar behavior toward similar victims for similar reasons).

■ Joinder did not violate Wildman's rights under the due process clause of the Fourteenth Amendment. In *Sandoval v. Calderon,* 241 F.3d 765, 772 (9th Cir.2000), we held that joinder does not violate due process "unless simultaneous trial of more than one offense actually rendered petitioner's state trial fundamentally unfair" so as to be prejudicial. Prejudice is shown when "the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* In *Sandoval,* we recognized

that such prejudice arises when joinder allows otherwise inadmissable evidence of other crimes to be introduced in a trial, or when a strong evidentiary case is joined with a weaker one. *Id.* Wildman does not contend that any of the joined charges were substantially weaker than the others. Instead, Wildman claims that evidence of prior bad acts of arson and menacing would have been otherwise inadmissible if he were tried separately on the assault and attempted murder charges.

The Oregon Evidence Code § 404(3), however, provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove character of a person in order to show that the person acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of* motive, opportunity, *intent,* preparation, plan, knowledge, identity, or *absence of mistake or accident.*

(Emphasis added). Evidence of menacing Mrs. Wildman in 1990 was admissible to prove Wildman's intent to commit the attempted murder and first degree assault against Mrs. Wildman in 1991 and to disprove Wildman's defense that he accidentally set Mrs. Wildman on fire. *See State v. Johns,* 301 Or. 535, 725 P.2d 312, 326–27 (1986) (allowing evidence of prior attempt to kill previous spouse six years earlier to prove intent and absence of mistake or accident in prosecution of defendant for murdering his current wife). Additionally, evidence that Wildman committed arson by setting a rug on fire during a fight with Mrs. Wildman in 1989 was also admissible to rebut Wildman's defense that he accidentally set Mrs. Wildman on fire. *See*

*State v. Wieland,* 131 Or.App. 582, 887 P.2d 368, 371 (1994) (permitting evidence that other fires were set on defendant's property to establish that the fire which resulted in the victim's death was not accidental). Because the evidence of the prior menacing and arson would have otherwise been admissible in Wildman's trial for attempted murder and first degree assault, joinder of those counts was permissible. Wildman, therefore, was not prejudiced by his appellate counsel's decision not to appeal the joinder.

Wildman also attacks appellate counsel's failure to challenge the consecutive sentences he received based on his convictions for attempted murder and first-degree assault.

■ Oregon Revised Statutes § 137.123(5)(a),[3] the provision under which the state court imposed the consecutive sentences for attempted murder and assault, "requires that the criminal conduct for which the consecutive sentence is contemplated be not merely an 'incidental' violation of a separate statutory provision but 'an indication of defendant's willingness to commit more than one criminal offense.'" *State v. Warren,* 168 Or.App. 1, 5 P.3d 1115, 1117 (2000), *review denied,* 330 Or. 412, 8 P.3d 220 (2000).[4] In *Warren,* the Oregon Court of Appeals indicated that convictions of attempted murder and first degree assault could support consecutive sentences if the facts indicate that the "defendant intended to kill the victim and that he acted volitionally to cause the victim serious physical injury." *Id.* In *Warren,* however, the court found that the trial court erred in imposing consecutive sen-

---

3. This statute was numbered § 137.123(4) at the time Wildman was convicted but the text was unaltered when the statute was renumbered. *Compare* Or.Rev.Stat. § 137.123(5) (1999) *with* Or.Rev.Stat. § 137.123(4) (1992).

4. While *Warren* was decided after Wildman's appellate counsel determined which issues to appeal, the reasoning in that case provides useful insights as to whether appellate counsel acted reasonably in not appealing Wildman's consecutive sentences.

tences based on convictions for attempted murder and first degree assault because the trial court had not made sufficient findings. *Id.*

Wildman has not challenged the adequacy of the factual findings. Rather, he posits that convictions for attempted murder and assault can never support consecutive sentences. Absent a challenge to the factual predicate supporting the consecutive sentences, Wildman cannot meet his burden of proving that his trial counsel acted unreasonably in failing to appeal his consecutive sentences. *See Pollard v. White,* 119 F.3d 1430, 1435 (9th Cir.1997) (requiring petitioner to prove that his appellate counsel's performance was not the result of a reasonable professional judgment, and that it was prejudicial to his defense). By setting Mrs. Wildman afire, Wildman arguably demonstrated an intent to kill Mrs. Wildman. By attempting to douse the flames, Wildman arguably demonstrated a separate intent to keep Mrs. Wildman alive with serious bodily injuries. Wildman's appellate counsel could therefore have reasonably believed that an appeal of Wildman's consecutive sentences would not have been successful.

Because Wildman cannot show that his appellate counsel acted unreasonably in not appealing his consecutive sentences, or the joinder of the charges, Wildman's claim of ineffective assistance of appellate counsel is without merit. The post-conviction state court's conclusion that Wildman was not denied effective assistance of appellate counsel, therefore, was not clearly erroneous.

## C. Procedural Default

The district court found that Wildman had procedurally defaulted on the remaining grounds for habeas relief by not raising those grounds on direct appeal or in his state post-conviction proceedings. The grounds subject to procedural default include: Wildman's contention that the State failed to prove a material element of the menacing charge; Wildman's contention that he was denied due process of law by the joinder of the attempted murder and first degree assault counts with the arson and menacing counts; and Wildman's contention that he was denied due process of law when he was given consecutive sentences based on his conviction for attempted murder and first degree assault allegedly in violation of state law.

Wildman does not appeal the district court's finding with respect to his allegation that the State failed to prove a material element of the menacing charge. Wildman also concedes that the issues of joinder and his consecutive sentences are subject to procedural default because he did not raise them on direct appeal or in his state court post-conviction proceedings. Wildman, however, argues his procedural default of the joinder issue should be excused because his appellate counsel's failure to raise that issue amounted to ineffective assistance of counsel. As previously set forth, however, Wildman's appellate counsel's action of not appealing the joinder issue does not constitute ineffective assistance of counsel. *See Poland v. Stewart,* 169 F.3d 573, 577 (9th Cir.), *cert. denied,* 528 U.S. 845, 120 S.Ct. 117, 145 L.Ed.2d 99 (1999) (holding that ineffective assistance of counsel constitutes cause for procedural default only if counsel's performance was constitutionally ineffective).

Wildman also seeks to excuse his procedural default on the issue of his consecutive sentences by alleging that his consecutive sentences were plainly illegal under the applicable Oregon statute and therefore manifestly unjust. To show manifest injustice resulting from a procedural default, Wildman, however, needs to establish factual innocence. *See Thomas v. Goldsmith,* 979 F.2d 746, 749 (9th Cir.

1992) (showing of factual innocence is necessary to trigger manifest injustice relief); *see also Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Since Wildman failed to challenge the facts underlying his convictions, his claim of manifest injustice is without merit. Wildman's admitted procedural defaults, therefore, are not excusable.

## CONCLUSION

Wildman has failed to show that the state court's decision involved an unreasonable application of clearly established federal law, or that his procedural default should be excused with respect to those issues not raised before the state court. Accordingly, we affirm the district court order dismissing Wildman's petition for habeas corpus.

**AFFIRMED.**