Argued and submitted March 31, reversed August 13, 2003

STATE OF OREGON,
*Respondent,*

*v.*

JOE SETH TREVOR McBEAN #1,
*Appellant.*

CR00-0853; A114385

74 P3d 1127

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David Groom, Acting Executive Director, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of reckless burning, ORS 164.335, and appeals, contending that there was insufficient evidence to establish his guilt. We review the sufficiency of the evidence to support a conviction to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). We resolve all evidentiary conflicts in the state's favor and give the state the benefit of all reasonable inferences. *State v. Krummacher*, 269 Or 125, 137, 523 P2d 1009 (1974). We reverse.

The facts, presented in the light most favorable to the state, *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994), are as follows. Defendant and two of his friends, Carreiro and Broderick, lived in an apartment complex in Pendleton near an open grassy field owned by Blue Mountain Community College. On August 19, 2000, defendant learned that Carreiro had set a grass fire in the nearby field and that Broderick was with him at the time. Defendant told Carreiro he thought the act was "pretty stupid." Two days later, he learned that Carreiro had set another fire in the same field.

The next day, defendant and Broderick, knowing that Carreiro was walking through the field on his way back from returning a video, decided to play a prank on him by concealing themselves in the grass and frightening him as he passed by. Carreiro heard them before they could scare him, and the three men had a brief conversation. At that point, Carreiro took out a cigarette lighter and lit the grass on fire. Defendant stomped on the fire in what he later characterized as an attempt to put it out. Instead, the fire spread. Defendant and Broderick then returned to defendant's apartment, where they were joined by Carreiro. They did not report the fire. An employee of the neighboring institution did, but the fire burned a portion of the field before the fire department arrived and extinguished it.

The next day, the assistant fire chief of Pendleton and an Oregon State Police trooper called on defendant to investigate the fires and some unrelated vandalism. After initially denying knowledge of the fires, defendant ultimately

told the investigators that his friends had set them. He admitted being present when the last fire was set.

After a trial to a jury, defendant was convicted of violating ORS 164.335(1), the "reckless burning" statute:

> "A person commits the crime of reckless burning if the person recklessly damages property of another by fire or explosion."

"Recklessly" in this statute modifies "damages" and "describes a mental state associated with the act of damaging property." *State v. Merideth*, 149 Or App 164, 167, 942 P2d 803, *rev den*, 326 Or 58 (1997). "Recklessly" is defined by ORS 161.085(9):

> " 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Thus, to obtain a conviction under the reckless burning statute, the state generally has to prove (1) that the defendant performed an act that caused a fire or explosion so as to damage another person's property; (2) that the act presented such a substantial and unjustifiable risk of damaging the property that only a person demonstrating a gross deviation from a reasonable standard of care would perform it; and (3) that the defendant was aware of the risk and chose to disregard it.

In the present case, the state does not allege that defendant incurred any criminal liability in connection with the first two fires; that he himself set any fires (the uncontradicted testimony of defendant, Carreiro, and Broderick establishes that Carreiro set the fires); or that he aided or abetted in setting a fire. Most importantly, the state does not maintain that defendant *intended* to spread the fire. The prosecutor expressly disavowed any need to prove intent; in closing, he argued that defendant's intention was to *extinguish* the fire. He told the jury:

"[Defendant] stands there and watches this man [Carreiro] light the grass on fire. He participates. *As he's trying to stomp it out, he spreads the fire.* That's reckless conduct.

"* * * * *

"[Defendant] described the lighter, said [Carreiro] lit the grass on fire with the lighter, then [defendant] said, I tried to put it out but it went too fast.

"Well, it went too fast because when he started stomping on that fire, it spread it. *Maybe that was the game. Maybe we'll set it on fire and stomp it out.*

"The fact is, at that point, he had participated in spreading this fire and, at that point, his conduct was reckless."

(Emphasis added.) Thus, the burden that the state set for itself was to prove (1) that defendant performed an act that caused the spread of the fire that Carreiro started; (2) that his act created such a substantial and unjustifiable risk of spreading the fire that only a person demonstrating a gross deviation from a reasonable standard of care would so act; and (3) that defendant was aware of that risk and chose to perform the act anyway.

The state never specifies which of defendant's acts allegedly amounted to reckless burning. As the transcript portions quoted above indicate, however, the prosecution clearly emphasized that the culpable action was stomping on the fire. In addition to the statements above, the prosecution also argued:

"By his admission alone of stomping on the fire and spreading the fire, [defendant's] testimony, he's engaged in reckless conduct and just walks away from it and let it burn.

"* * * * *

"These young men were starting fires. They were playing, a game to them. That's reckless."

There are several problems with this theory. For example, the state presented no evidence at trial that stomping on a fire creates any risk of spreading it, much less a substantial

and unjustifiable risk, even though one of the state's witnesses was the assistant fire chief. Indeed, it is common knowledge[1] that *not* stomping on a fire could lead to its spread. A widely used dictionary defines "stomp" as "stamp" and then provides the following definition: "to extinguish, eradicate, or do away with (something) by or as if stamping with the foot * * * usu. used with *out* ‹one small fire . . . was easily ~*ed* out›." *Webster's Third New Int'l Dictionary* 2222 (unabridged ed 1993). Although this dictionary definition may be of limited utility in defining what a word means in a statute (for example where the word's context implies a different definition), it nonetheless provides an authoritative *report* of how a word is used in common parlance and therefore serves as an indication of what might be "common knowledge." In any event, we conclude that in the absence of some supporting evidence or, at the least, some argument, no rational trier of fact could find that stomping on a fire presents such a substantial risk of spreading it that the act is a gross deviation from reasonable conduct and, in light of the fact that stomping on a fire is widely believed to be a method of stopping its spread, that the risk was unjustifiable.

∎        However, we need not rely on such an imprecise and historically contingent concept as "common knowledge." Even if we could presume that the jury could find, beyond a reasonable doubt, that defendant, by stomping on the fire, took a grossly unreasonable and unjustifiable risk of spreading it, the state would still have to prove beyond a reasonable doubt that he did so while aware of and in conscious disregard of that risk. ORS 164.335; ORS 161.085(9). Again, no evidence whatsoever supports that conclusion. And although the jury was entitled to disbelieve the participants and to

---

[1] "[T]he common knowledge of man ranges far and wide, so the doctrine embraces matters so curiously diverse as, *e.g.*, the rising of the sun, the status of the Isle of Cuba, the late Civil War, the contents of the Bible, the character of a camp meeting, the height of the human frame, the fable of 'the frozen snake,' the characteristics and construction of the ice cream freezer, the general use of the diamond stack or the straight stack spark arrester, the habits of those who shave, in fine, 'all things, both great and small.' "

*Peterson v. Standard Oil Co.*, 55 Or 511, 517-18, 106 P 337 (1910) (quoting *Town of North Hempstead v. Gregory*, 65 NYS 867, 689 (1900)). On the scale of what is and is not common knowledge, the tendency of stomping on fire to extinguish it lies, we believe, somewhere between "the rising of the sun" and "the fable of the frozen snake."

draw reasonable inferences from the evidence, it must have some relevant evidence from which to draw them. *State v. Beason*, 170 Or App 414, 423-24, 12 P3d 560 (2000), *rev den*, 331 Or 692 (2001). The inference must reasonably flow from predicate facts. *Id.* Neither at trial nor on appeal does the state point to (much less establish) *any* facts that are even remotely relevant to the question whether or not defendant was aware that stomping on a fire presented a substantial and unjustifiable risk of spreading it, even, presuming for the sake of argument, if the state could establish the counterintuitive fact that such a risk existed. Instead, the state relies on defendant's knowledge of the two earlier fires, on the fact that he did not report them or the third, and on his equivocal testimony regarding an unrelated issue (whether or not he saw Carreiro take a cigarette lighter out of his pocket). Those facts may be evidence that defendant has very bad taste in friends and that he has a deplorable lack of civic responsibility. They may impeach his status as a truth-teller. But they bear no relation to his state of mind when he stomped on the fire that he is accused of recklessly spreading.

■          We acknowledge that in some circumstances a defendant's state of mind can be inferred from actions surrounding the allegedly criminal act. "Intent is an operation of the mind, and it is seldom susceptible of direct proof. * * * A defendant does not telegraph his or her intent for the world to see, and there is no stopwatch keeping track of when a defendant's intent to commit a specific act is formed." *State v. Rose*, 311 Or 274, 282, 810 P2d 839 (1991). However, the surrounding acts do not provide evidence, even circumstantial evidence, of a defendant's state of mind unless there is some "logical connection" between the surrounding acts and the risk associated with the allegedly reckless act. *Warren v. Baldwin*, 140 Or App 318, 329, 915 P2d 1016, *rev den*, 324 Or 229 (1996), is instructive. In that case, Warren, after a day of drug dealing, drug use, and fighting, shot the victim while attempting to pistol whip another person with a loaded handgun. In closing argument, the prosecutor argued that Warren "was reckless when the gun discharged *because* he had been dealing drugs before the shooting." *Id.* at 329 (emphasis in original). We held that the day's activities were not relevant to the issue of whether the shooting was "reckless" under ORS 163.125

because there was no "logical connection" between the surrounding activity and Warren's " 'awareness and conscious disregard of' the risk that a stray bullet could kill someone in the room." *Warren*, 140 Or App at 329. Likewise, there is no logical connection between any fact in evidence in the present case, including defendant's awareness of the earlier fires and his failure to report the one he allegedly spread, and his awareness and conscious disregard of the risk that stomping on a fire could spread it. In short, no rational trier of fact could conclude from the evidence that defendant was aware of, and disregarded, a substantial and unjustifiable risk that, by stomping on the fire that his friend set, he was going to cause the fire to damage another's property. *Accord State ex rel Juv. Dept. v. Anderson*, 14 Or App 391, 513 P2d 514 (1973) (reversing jurisdictional finding where no evidence supported youth's awareness and disregard of risk of throwing matches in paint thinner).

■       The state also appears to make a perfunctory argument that defendant's failure to report the fire was a culpable reckless act. We reject that argument. The state never offers any authority or legal argument for the proposition that defendant had a legal duty to report the fire or for the proposition that failure to perform an act that one has no legal duty to perform can constitute criminal recklessness. Instead, it simply asserts the failure and concludes that it is reckless conduct. *But see* ORS 161.095(1) ("The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing."); ORS 161.085(3) (" 'Omission' means a failure to perform an act the performance of which is required by law."). If the state's assertion were correct, then a person who sees a grease fire, attempts to extinguish it with water but succeeds only in spreading it, then leaves the scene, is guilty of reckless burning. We are unwilling to affirm a conviction on a theory with such consequences in the absence of argument either below or in this court.[2]

Reversed.

---

[2] Our resolution of defendant's sufficiency of the evidence claim obviates our need to address his claim that the trial court erred in refusing to give two requested jury instructions.