Argued and submitted September 28, 2004, affirmed April 20, petition for review denied August 23, 2005 (339 Or 230)

## STATE OF OREGON,
*Respondent,*

*v.*

## DUANE DALLES SCHLENDER,
*Appellant.*

20 02 18522; A120594

110 P3d 653

Ingrid A. MacFarlane argued the cause and filed the brief for appellant.

Jennifer Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jill Smith, Assistant Attorney General.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Deits, Judge pro tempore.

DEITS, J. pro tempore.

---

* Brewer, C. J., *vice* Leeson, J. pro tempore.

**DEITS, J. pro tempore**

Defendant appeals a judgment of conviction for second-degree manslaughter, ORS 163.125. He argues that the trial court erred in denying his motion for a judgment of acquittal, because the state introduced insufficient evidence that he acted recklessly. We review the trial court's ruling for errors of law, viewing the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found beyond a reasonable doubt that defendant acted recklessly. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). We affirm.

In an attempt to take his own life, defendant drove his car at 40-45 miles per hour through the wall of the Roaring Rapids Pizza restaurant. His car struck and killed a janitor who was working inside. The crash occurred at approximately 7:50 a.m., about 40 minutes before the restaurant's other employees usually arrive for work. Defendant was charged with reckless driving, criminal mischief, and manslaughter in the second degree—that is, recklessly causing the death of another. ORS 163.125(1)(a). Defendant conceded at trial that he was guilty of the first two offenses. The only disputed issue at trial was whether he was reckless or, as he argued, merely negligent. That issue turned on whether defendant was aware of and consciously disregarded a substantial and unjustifiable risk that driving his car into the pizza parlor would kill someone. *See* ORS 161.085(9) (defining recklessness).

In its case-in-chief, the state presented evidence that defendant sat in the parking lot for several minutes before crashing his car into the building and that, during that time, the victim was walking around inside the pizza parlor and was visible through the front windows of the restaurant. In addition, there was evidence that several vans, including the victim's, were parked in the pizza parlor's parking lot and that there were a number of lights on inside the restaurant that would have been visible from the parking lot. A police officer also testified that, after the accident, defendant "acknowledged that, yes, janitors do—you know, do work at

odd hours in the building." Also, according to the officer's testimony, defendant "acknowledged that there's the possibility there could have been somebody in the building." Finally, the officer testified that defendant "said he knew that—maybe he knew somebody was in the building but he never saw anybody in it or around it * * *."

At trial, defendant testified that he had no idea that there was anyone in the building. He admitted making the above statements to the testifying officer, but he explained that, although he knew somewhere in the back of his mind that janitors work at all hours, he just was not thinking about that at the time of the accident. Defendant said that he saw the delivery vans but thought that they had been left there unattended overnight. He testified that he did not see the victim's van because there was a tree obscuring his view of it. He asserted that, if he had seen the victim's van, he would not have driven his car through the wall. He also acknowledged that he saw the lights on in the restaurant, but he thought that they were security lights. Defendant explained that he did not see the victim walking around inside the pizza parlor in the minutes leading up to the accident because he was writing a suicide note and had his head down.

To rebut defendant's testimony, the state offered testimony from a janitor who had occasionally worked at the restaurant with the victim. The janitor testified that, if defendant was parked where he claimed he was, he should have been able to see the victim's van. The janitor agreed that there is a tree near the parking lot, but he said that the tree is far to the left of where defendant parked, whereas the van and the front windows of the pizza parlor would have been directly in front of defendant. The janitor also confirmed that defendant should have been able to see the lights on in the restaurant and the victim walking around inside. Indeed, he stated that, when he and the victim cleaned the restaurant, it was well lit and that he has seen people walking around inside the restaurant from the street, which is all the way across the parking lot.

The jury convicted defendant on all three charges. Defendant argues on appeal that, on the charge of second-degree manslaughter, there was insufficient evidence of his

recklessness to go to the jury and that his motion for a judgment of acquittal should have been granted. On appeal, we will uphold a conviction if the evidence and all reasonable inferences flowing from it would enable a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *King*, 307 Or at 339. In reviewing the evidence, we treat all conflicts in the evidence as if they had been decided in the state's favor, *State v. Krummacher*, 269 Or 125, 137, 523 P2d 1009 (1974), and defer to any credibility determinations that the jury may have made, *State v. Walters*, 311 Or 80, 82, 804 P2d 1164, *cert den*, 501 US 1209, 111 S Ct 2807 (1991). "Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury so to find." *Krummacher*, 269 Or at 138.

As discussed above, a person commits manslaughter in the second degree when the person recklessly causes the death of another human being without justification or excuse. ORS 163.125(1)(a) (criminal homicide constitutes manslaughter in the second degree when it is committed recklessly); ORS 163.005(1) (criminal homicide is causing the death of another human being with a culpable mental state and without justification or excuse). ORS 161.085(9) defines recklessly as follows:

> " 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

There is no doubt that defendant's conduct caused the death of another human being. Additionally, defendant does not contest that driving his car through the wall of a building created a risk of such nature and degree that disregard thereof constituted a gross deviation of the standard of care that a reasonable person would observe in the situation. The only question is whether there is evidence from which a rational juror could infer that defendant was aware of and

disregarded a substantial risk that his conduct would cause someone's death.

■ Because the statute requires that defendant be aware of the risk, our inquiry must focus on defendant's actual perceptions at the time of the crash. *State v. Curtiss*, 193 Or App 348, 352-53, 89 P3d 1262, *rev den*, 337 Or 282 (2004). However, a finding of recklessness does not require a finding that defendant *knew* that someone was in the building. The statute requires only awareness of a substantial *risk* that someone could be in the building and be killed. A factfinder may infer from circumstantial evidence that a defendant was aware of a substantial risk, so long as that inference reasonably flows from the predicate facts. *State v. McBean*, 189 Or App 235, 241, 74 P3d 1127 (2003).

Defendant argues that the facts in this case resemble those in *McBean*, where we held that an inference of recklessness did not reasonably flow from the predicate facts. In *McBean*, the defendant's friend set some grass on fire with his cigarette lighter. The defendant stomped on the fire, in what he later characterized as an attempt to put it out. Instead, the fire spread. The defendant was convicted of reckless burning. On appeal, the state argued that the following facts constituted sufficient evidence of recklessness: (1) the defendant was aware that his friend had started two fires earlier in the week, (2) the defendant reported neither the earlier fires nor the third, and (3) the defendant equivocated about whether he saw that his friend was carrying a cigarette lighter. We concluded that those facts bore no logical relationship to the defendant's state of mind when he stomped on the fire. Accordingly, we held that the evidence there was insufficient to establish recklessness. *Id.* at 242.

Defendant argues that, as in *McBean*, there was no evidence that he was aware of a substantial risk that driving his car through the wall of the restaurant would cause another human being's death. We disagree. The state offered both direct and indirect evidence of defendant's culpable mental state. As noted above, a police officer testified that defendant said that "maybe he knew someone was in the building." Further, both the officer and defendant testified that defendant was aware that people work at all hours in

buildings that contain regularly operating businesses. The state also presented evidence that defendant would have been able to see several lights on in the restaurant, the victim's van parked out front, and the victim himself walking around inside the restaurant. Unlike the facts in *McBean*, the facts in this case logically and directly support an inference that defendant saw signs of life in and around the building and realized that there was a substantial possibility that someone was inside. *Cf. State v. Petersen*, 17 Or App 478, 487, 522 P2d 912, *rev'd in part on other grounds*, 270 Or 166, 526 P2d 1008 (1974) (jury could infer that the defendant drag-racer was aware of a substantial risk of causing death where evidence indicated that he was familiar with automobiles and automobile racing and defendant acknowledged that he knew at the time that he should not have engaged in the race).

Although defendant's testimony—that he did not see the victim or the victim's van—as well as other circumstances—such as defendant's apparent shock upon learning of the victim's death—supported a contrary inference, it was up to the jury to choose among those competing inferences. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) ("[T]he established facts may support multiple reasonable inferences and, if they do, which inference to draw is for the jury to decide."). Moreover, the jury was not required to believe defendant's testimony. *See Hindman v. Coy*, 207 Or 279, 284, 295 P2d 1097 (1956) ( jury is the sole judge of credibility and is entitled to disbelieve any witness). In sum, when viewed in the light most favorable to the state, the evidence in this case was sufficient for a rational juror to find that defendant was aware of and disregarded a substantial risk that there was someone inside the restaurant who could be killed by his conduct. Accordingly, the trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.